SAMUEL L. BOYD *et al.*

*v.*

BLAIR STRAHAN *et al.*

1. WILL — *construction of.* As a general rule, where a will bequeaths personal property to be at the absolute disposal of the legatee, he becomes, in the absence of all clauses showing a contrary intent, the absolute owner.

2. But the rule which controls all others in the interpretation of wills is, that the intention of the testator, to be gathered from the entire will, must govern.

3. Where a testator, by one clause in his will, gave to his wife $1,200 in money, and his household furniture, "to her and to her heirs and assigns forever," and by the next clause, gave to her "all his personal property of every description, not herein enumerated, or otherwise disposed of in this will, to be at her own disposal, and for her own proper use and benefit during her natural life;" *Held*, that under the last clause she took only a life interest in the residuary estate.

APPEAL from the Circuit Court of Randolph county; the Hon. SILAS L. BRYAN, Judge, presiding.

This was a bill in chancery, filed by the appellees at the April term of the Randolph Circuit Court, for the purpose of determining the title to certain personal property claimed by both the appellants and appellees, under the will of John Strahan, deceased. The court decreed in favor of the complainants, and the defendants appealed. The appeal was transferred, by consent, from the First to the Second Grand Division. The facts appear in the opinion of the court.

Messrs. BAKER & UNDERWOOD, for the Appellants.

The questions are:

1.   Do the words of the will of John Strahan convey to Mary V. Strahan absolute title to the property devised thereby?

2.   If said words convey only title for life, with power of disposal, was not that power well executed by the will of Mary V. Strahan?

Mary V. Strahan certainly had an unlimited right of disposal during her life; she could have disposed of the whole of the property; and this power of disposal carried full title to the property.   1 Jarman on Wills, note (1) side p. 793, and authorities there cited; *White* v. *White*, 6 Vermont, 232; *Duhl's Case*, 36 Penn. St. R. 121; *Jackson* v. *Coleman*, 2 Johns. 392; *Helmer* v. *Shoemaker*, 22 Wend. 139; *M'Lean* v. *M'Donold*, 2 Barb. S. R. 537; *Swope* v. *Swope*, 5 Gill. 225; 2 Kent's Com. 354.

But if not so — if she only took a life interest, with power of disposal, it is clear that this power could be executed by will.   It is not true that her will must be deemed as operating on other residuary property; there is no evidence she had any such.   Her will devises "all the residue of my (her) personal effects," and at the time of making her will, she clearly had an unexpired property in the effects in question — could have given them away — and consequently the will covers these effects.

"Where a power is conferred to dispose of an estate, without defining the mode in which the power must be executed, it may be executed either by deed or will."   And courts "generally incline to put a liberal construction on the words of the power."   *Fairman* v. *Beal*, 14 Ill. 246; *Andrew* v. *Brumfield*, 32 Miss. 118.

Mr. H. K. S. O'MELVENY, for the Appellees.

1.   In the construction of wills, the court is bound to find out the intention of the testator, if it is possible so to do, and

to make such construction as will effectuate that intention. Ward on Legacies, p. 194.

2.   When the words of two bequests or devises are different, the natural conclusion is that, as the testator's expressions are varied, they were altered because his intentions in both were not the same.   Ibid. 197.

3.   In this will, the testator, John Strahan, is particular, when he devises a fee, or an absolute property in the legacy, to define it to be so, and when a life estate, it is equally clearly expressed.

1st.  He gives his wife one hundred and fifty-nine acres of land, and to her heirs and assigns forever.

2nd.  He gives five acres of land, including the dwelling-house, during her natural life.

3rd.  He devises this five acres of land, after the termination of that life estate, to Lindsey; and to his heirs and assigns forever.

The eighth bequest to his wife is $1,200, and his household furniture, and to her heirs and assigns forever.

The ninth bequest is in the words following:

" And I do hereby give, devise and bequeath to my wife, Mary V. Strahan, the balance of all the money of my estate, in notes or otherwise, together with all my personal property of every description not herein enumerated, or otherwise disposed of in this will, to be at her own disposal and for her own proper use and benefit during her natural life."

Here the eighth and ninth bequests to the same person, but in different terms, clearly express the intention of the testator, the one absolute, the last limited, or for life.   Ward, 197; 9 East R. 273; 11 Vesey, 546; 19 Vesey, 537.

A life estate may be created in chattels or personalty, and such is the case here.   6 Peters' U. S. R. 79; 2 Kent, (marg.) page 352, *et seq.*

But evidence appears in the will of Mrs. Mary V. Strahan, that she understood the intention of the testator to be a life estate, only, by the ninth bequest.

She directs the sale of forty acres of land, " and the proceeds

of said sale to be appropriated to paying the aforesaid legacies."
If she had claimed this $1,855.55, no such sale would have
been necessary.

If even the language of the ninth bequest could be con-
strued into an estate, with power of appointment, we deny that
the will of Mrs. Strahan made any disposition of it, and that it
remained undisposed of, and therefore is subject to distribution
among the next of kin of John Strahan.    Ward on Legacies,
209, 234; 2 Vesey, 589; 4 Vesey, 60; 8 Vesey, 588.


Mr. JUSTICE LAWRENCE delivered the opinion of the Court:


In the year 1859 John Strahan died, leaving a will contain-
ing the following clauses, which are all that affect the deter-
mination of this case :

"*Eighth.*   I do hereby further give, devise and bequeath,
unto my wife, Mary V. Strahan, the sum of twelve hundred
dollars in money, also all my household furniture, beds and
bedding, to her and to her heirs and assigns forever.

"*Ninth.*   I do hereby further give, devise and bequeath my
wife, Mary V. Strahan, the balance of all the money of my
estate in notes or otherwise, together with all my personal
property of every description, not herein enumerated or other-
wise disposed of in this will, to be at her own disposal, and for
her own proper use and benefit, during her natural life."

Under the last clause, Mary V. Strahan received the sum of
$1,855.55.   She died on the 13th of March, 1860, leaving a
will made on the 7th of March, 1860, in which, after making
various devises and bequests of land, money and a few articles
of household furniture, she proceeded as follows:  " Sixteenth,
and lastly, I give, devise and bequeath to my brother, Samuel
L. Boyd, and to my sister Rebecca, all the residue of my per-
sonal effects, for their use and benefit."

The persons named in this clause are the appellants in this
record.   They claim the above named sum of $1,855.55, as
residuary legatees of Mary V. Strahan, while the appellees, who

are the heirs of John Strahan, claim by virtue of such heirship.

It is contended by the counsel for the appellants that inasmuch as the will of John Strahan gave to Mary V. Strahan the right of disposal of said property during her natural life, this right of disposal vested her with the absolute title. That as a general rule, where a will bequeaths personal property to be at the absolute disposition of the legatee, he becomes, in the absence of all clauses showing a contrary intent on the part of the testator, the absolute owner, will be readily conceded. The question still recurs, what was the intent of the testator in the will before us? Did he design to give anything more than the use and enjoyment of his residuary property during the natural life of his wife?

The familiar rule which controls all others in the interpretation of wills, is, that the intention of the testator to be gathered from the entire will, must govern. There is no other class of written instruments known to the law in which so little importance is to be attached to the technical sense of language in comparison with that sense in which the apparent object of the writer indicates his words to have been used. So far is this principle carried, that the court say, in 3 Wils. 141, "cases on wills may guide us to general rules of construction; but unless a case cited be, in every respect, directly in point, and agree in every circumstance, it will have little or no weight with the court, who always look upon the intention of the testator as the polar star to direct them in the construction of wills." This language is quoted approvingly by Ch. Justice MARSHALL, in *Smith* v. *Bell,* 6 Pet. 80.

Now when, in the case before us, we compare the eighth and ninth clauses of the will of John Strahan, there can be no reasonable doubt but that he intended, by the last clause, to give his wife only a life estate in the property therein described. By the eighth clause he gives to her twelve hundred dollars in money and his household furniture, "to her and to her heirs and assigns forever." By the very next sentence he gives to her his residuary personal estate, "to be at her own disposal,

and for her own proper use and benefit, during her natural life." No unprejudiced person can read these clauses, and remember that one immediately follows the other in the will, without coming to the conclusion that the testator meant to create a different estate in the last clause from that which he had created in the preceding. Else why the studied difference. of expression? Else why insert this clause in the will at all? For, if it gives the ownership of the property, the same object would have been much more easily and surely attained, by inserting in the eighth clause, after the word "bedding," the words used in the last clause — "all my personal property of every description not herein enumerated or otherwise disposed of in this will." We must suppose the testator to have used language with ordinary intelligence, and if he did so, he clearly did not adopt these different and even antagonistic modes of expression, in direct juxtaposition with each other, without intending a difference of meaning. Both clauses must be so construed as to give to each its natural and appropriate meaning, and, to do this, we are obliged to say that the first gave to the legatee the absolute ownership in certain personal property, and the next gave to her, in certain other personal property, an estate for life.

The case of *Bradley* v. *Westcott,* 13 Vesey, 450, is strikingly like the one at bar, though a stronger case. There the testator gave his personal property "to the sole use and behoof of his wife for and during the term of her natural life, to be at her full, free and absolute disposal and disposition during her natural life, without being in anywise liable to be called to any account concerning the amount, value, or particulars thereof by any person whomsoever." The testator further authorized his wife to dispose by will of certain portions of the personal property, and of five hundred pounds in money. The question before the court was, whether under this will the widow took the absolute property, or only the life estate. The Master of the Rolls said : " As the testator has given her, in express terms, an interest for life, I cannot, under the ambiguous words afterwards thrown in, extend that interest to the absolute property.

I must construe the subsequent words with reference to the express interest for life previously given; that she is to have as full, free and absolute disposition as a tenant for life can have." The words of the will in this case were much stronger in favor of the claim of absolute ownership in the legatee than in the will we are now construing. The property bequeathed was to be at her "full, free and absolute disposal" during her natural life. Yet the court held that she only had an estate for life, and could only make such disposition as a tenant for life could make.

In *Smith* v. *Bell*, 6 Pet. 72, there was a bequest of all personal property to the wife absolutely, and then a provision that the remainder, after her decease, should be for the use of his son. The court held that the last clause qualified the first, and showed the intent of the testator that the widow should take only a life estate. Chief Justice MARSHALL, in giving the opinion of the court, uses the following language:

" The first part of the clause, which gives the personal estate to the wife, would undoubtedly, if standing alone, give it to her absolutely. But all the cases admit that a remainder limited on such a bequest would be valid, and that the wife would take only for life. The difficulty is produced by the subsequent words. They are, 'which personal estates I give and bequeath unto my wife, Elizabeth Goodwin, to and for her own use and benefit and disposal absolutely.' The operation of these words, when standing alone, cannot be questioned. But suppose the testator had added the words ' during her natural life.' These words would have restrained those which preceded them, and have limited the use and benefit and the absolute disposal, given by the prior words, to the use and benefit and to a disposal for the life of the wife. 13 Ves. 444. The words then are susceptible of such limitation. It may be imposed on them by other words. Even the words ' disposal absolutely' may have their character qualified by restraining words, connected with, and explaining them to mean, such absolute disposal as a tenant for life may make."

The learned judge then proceeds to show that the devise of

a remainder to the son is to be considered as meaning what the words "during her natural life" would have meant if they had been added to the bequest to the wife.

Interpreted by the principles laid down in these cases, the will before us is free from difficulty. On these authorities there would be no doubt, even if the question turned on the ninth clause alone. The words in that clause, "during her natural life," would so qualify the power of disposal as to make it mean such disposal as a tenant for life could make. This is the natural import of the language, and when to this is added the light shed upon the will by the eighth clause, all difficulty is removed.

We have carefully examined the various cases cited by the appellant. As is true of most cases depending upon the construction of wills, they chiefly turn upon facts peculiar to each case, and there is not one of them in which the analogy to the present case is not far more remote than between this case and and those above cited.

In the view we have taken, it is unnecessary to consider the other point made by the counsel of appellant upon the construction of Mrs. Strahan's will. If she had only a life estate, and only the power of such disposition as a tenant for life could make, she had of course no power to appoint by will.

*Decree affirmed.*