CANEDY v. JONES.

SAME v. RIDDLE.

1. The unpunctuated will of a testator was as follows: "Being desirous of disposing of all such worldly estate as it hath pleased God to bless me with do make and ordain this my last will in manner following I desire that all my just debts and funeral expenses be paid then I give to my daughter Nancy all my real and personal estate of every description and all the money due to me to use and dispose of as she may think proper during her natural life provided she maintains and supports her mother decently during her life." *Held,* that Nancy took an absolute estate.

2. Even if a life-estate in Nancy, the power was given to her of disposing during her life-time of the property absolutely, and she having conveyed a tract of land acquired under this will, her alienees took a fee-simple title.

Before PRESSLEY, J., Laurens, February, 1882.

The opinion states the case. The order of the Circuit judge was as follows:

In this case defendant Charles Jones demurs, and assigns for grounds that the complaint does not set forth a cause of action, and that if plaintiffs have a cause of action, the proceedings should be in partition. The cause of action rests on the will of William Canedy, wherein he gave to Nancy Canedy all his real and personal estate of every description, and all the money due him, to use and dispose of as she may think proper during her natural life. She sold to Charles Jones eighty acres of the land so bequeathed to her, and having since died, her estate in said land is supposed to be ended, and plaintiffs, as heirs-at-law of William Canedy, seek in this action to recover it.

On the first question raised by the demurrer, my judgment is: That Nancy Canedy took only a life-estate in the said land. The words of the will do not make a general gift with power of disposition or appointment. The clause, "during her natural life," qualifies the whole sentence, and the words, "to use and dispose of as she may think proper," were only intended to prevent all interference with her management and use of the property whilst

her estate lasted. I see nothing in said will which indicated that the words "during her natural life" were intended to limit only the "money due." In *Moon* v. *Moon*, 2 *Strobh. Eq.* 327, a limitation somewhat like this was held to apply only to the negroes, not the land. But in that will the negroes were bequeathed to others after the life-estate, and no such disposition was made of the land, either by particular devise or residuary clause. The court held that this difference between the disposition of the land and the negroes indicated an intent to sever the land from the words "during life." No such intent being indicated in this case, I regard said words as attached to the whole gift.

On the second question my judgment is: That Nancy Canedy, as one of the heirs-at-law of William Canedy, had a share in remainder in said land after the ending of her life-estate, and that her conveyance to Charles Jones gave him title to all she could then claim, or to which she might become entitled in case any of the other heirs of William Canedy should die before her, leaving no issue. This view of the case entitles Charles Jones to have the case proceed in equity, so that out of the eighty acres sold to him by Nancy Canedy her share or shares in the whole tract may be set apart to him. The case is therefore referred to the master to take the testimony, and report who are the heirs-at-law of William Canedy; whether any of them died in the life-time of Nancy Canedy without issue; what are the shares of each in the said land, and any special matter necessary to the final partition of the whole tract of land bequeathed by William Canedy, or the proceeds of the same if it cannot be fairly divided.

*Messrs. Holmes & Simpson,* for appellants, cited 3 *Jarm. Wills* 31, and *note;* 13 *Johns.* 537; 12 *Serg. & R.* 54; 19 *Pa. St.* 87, 515; 26 *Iowa* 272; 3 *Desaus.* 249; 13 *Ves.* 445; 2 *Johns.* 393; 52 *Pa. St.* 219; 15 *S. C.* 277; 21 *Pick.* 412; 3 *Jarm. Wills* 35; 4 *Kent Com.* 319; 5 *Hill* (*N. Y.*) 410; 2 *Strobh. Eq.* 134, 327; 9 *Rich. Eq.* 360; 16 *Johns.* 537.

*Mr. J. W. Ferguson,* contra, cited 6 *Pet.* 75; *Bailey Eq.* 526; *Sugd. Pow.* 459; 3 *Jarm. Wills* 40; 15 *S. C.* 440; 1 *Redf. Wills*

425; 18 *How.* 391; 6 *Hare* 145; 18 *Ves.* 40; 11 *Rich.* 514; 4 *Eng. Rep.* 110; 2 *Strobh. Eq.* 327; 93 *U. S.* 327; 36 *Ill.* 355.

March 30th, 1883. The opinion of the court was delivered by

MR. JUSTICE McIVER. These two cases, resting upon the same facts and involving the same legal principles, were heard together on Circuit, and were heard and will be considered together here.

The plaintiffs, as heirs-at-law of William Canedy, deceased, seek to recover two tracts of land—one in the possession of defendant Jones, and the other in the possession of the defendant Riddle—which had been conveyed to them by Nancy Canedy upon the theory that she had only a life-estate therein, and that upon her death (which occurred prior to the commencement of these actions), the tracts of land in question reverted to the heirs-at-law of said William Canedy. It was conceded that the land belonged to William Canedy at the time of his death, and that he died leaving a will, of which the following is a copy: "In the name of God Amen  I William Canedy * * * being desirous to dispose of all such worldly estate as it hath pleased God to bless me with do make and ordain this my last will in manner following I desire that all my just debts and funeral expenses be paid then I give to my daughter Nancy Canedy all my real and personal estate of every description and all the money due me to use and dispose of as she may think proper during her natural life provided she maintains and supports her mother Elizabeth Canedy decently during her life and lastly I do constitute and appoint my daughter Nancy Canedy executrix of this my last will and testament hereby revoking all other and former wills and testaments by me heretofore made."

The questions made turn upon the proper construction of this will. The Circuit judge held that the will conferred only a life-estate upon Nancy, and that upon her death the estate reverted to the heirs of the testator; but that Nancy, being one of the heirs, her share became vested in her alienees, the defendants, Jones and Riddle; and, therefore, that it was a proper case for

partition. He therefore granted orders for the purpose of carrying into effect that view.

The defendants, Jones and Riddle, make three points by this appeal: 1. That by a proper construction of the will of William Canedy, his daughter Nancy took an estate in fee and not a life-estate merely. 2. That if she took only a life-estate, yet she took such estate with power to dispose of the property absolutely; and that having exercised the power by conveying to Jones and Riddle the land in question, they took absolute estates therein. 3. That the plaintiffs having failed to make out the case as stated in their complaints, which were not framed with a view to partition, the complaints should have been dismissed, and it was error to order partition.

First, then, as to the nature of the estate which Nancy Canedy took under a proper construction of the will. The cardinal rule in construing a will is to look for the intention of the testator as expressed in the words of the will. With this view, let us examine carefully the terms used by the testator in this case. In the first place, it must be obvious, even to the casual reader, that the will is not artistically drawn, but is the work of one not familiar with the drawing of such papers. It is embraced in a single sentence, and counsel on both sides state in their argument that it is without punctuation marks of any kind, though the copy set out in the "Case" does exhibit such marks. We may naturally expect, therefore, to find that the testator has expressed his intention in loose and inaccurate language; and, what is most likely in such cases, that the testator would, in the effort to express his meaning, employ more words than were necessary, and, by needless repetition, raise doubts as to what was his real intention.

The next thing that must strike every one upon reading this will is, that it was the intention of the testator to dispose of his entire estate; and that he did not intend to die intestate as to any portion of it. This is clear from the language used in the introductory part of the will, "being desirous to dispose of all such worldly estate as it has pleased God to bless me with." This being so, in order to avoid an intestacy which the testator did not intend, and to make the will operate as a disposition

of his entire estate which he did intend, it would be necessary to construe the devise to Nancy as creating an estate in fee instead of a life-estate only. But this is not all; the declared purpose of the testator being to dispose of all his estate, that purpose would be entirely defeated by construing the devise to Nancy as a life-estate, for there is no remainder and no residuary clause in the will, and the result would be that instead of disposing of all his estate, a large portion, perhaps the most valuable portion, of it would be left entirely undisposed of.

Again, the use of the word "estate" implies a fee, for, as is said in 2 *Jarm. Wills* 132: "It has been long established that a devise of a testator's estate includes not only the *corpus* of the property but the whole of his interest therein;" and this doctrine has been recognized in at least two of our own cases, *Fraser* v. *Hamilton*, 2 *Desaus.* 573, and *Cruger* v. *Heyward*, *Id.* 422. It being conceded that the testator owned the lands in fee-simple, when he gave all his estate to his daughter he must be considered upon the authorities above cited to have given the fee to her.

Again, the fact that the estate which he gave to Nancy was charged with the support of her mother, is a strong indication that he intended Nancy to take an absolute estate and not an estate for life merely; for such an estate might not have proved to be of sufficient value to provide for what seemed to be the primary object of the testator—the comfortable support of his widow. Indeed, if the widow survived Nancy, which was not by any means impossible, then, if the latter took only a life-estate, the scheme which the testator had provided to effect what is conceded to have been his primary object, would have been defeated. True, in such a case, the widow would have been entitled to one-third of the estate; but that was not the provision which he manifestly intended for her; and it was for him to judge; and he had seen fit to provide that his entire estate should be charged with her support. We are satisfied, therefore, that, looking at the will as a whole, the testator intended, by the words he used, to give to his daughter Nancy an estate in fee-simple and not a life-estate merely.

Is there anything in the will which imperatively demands that we should place a different construction upon the terms of

this will, and thereby defeat what seems to us, from the circumstances above mentioned, to have been in the mind of the testator when he penned his will? It is not sufficient for this purpose that we should find expressions in the will which would render the construction demanded by the general scope of the will doubtful; for, as was said by DeSaussure, chancellor, in *Waring* v. *Middleton*, 3 *Desaus.* 251: "It is common, in cases of wills in which there is a clause in the beginning of the will declaring an intention to dispose of the whole of the estate—to infer from thence that, as the testator, avowedly, did not mean to die intestate of any part of the estate, the devises, even of a doubtful nature, should be construed favorably to extend the estate and give a fee-simple to the devisees, because a contrary construction would tend (where there was no residuary clause) to produce an intestacy as to some part of the estate against the express declaration of intent by the testator."

It will be observed that the estate is not given to Nancy for and during the term of her natural life in express terms, as would strike any one, even the most ignorant and inexperienced, as the most natural way of expressing an intention to create a life-estate, but the language used is: "I give to my daughter Nancy Canedy all my real and personal estate of every description and all the money due me to use and dispose of as she may think proper during her natural life provided she maintains and supports her mother Elizabeth Canedy decently during her life." So that the question is whether the words, "during her natural life," relied upon to cut down Nancy's estate to one for life only, in the connection in which they are found, imperatively demand that we should override what we have seen to be the intent of the testator from the circumstances above referred to?

The words relied upon do not follow the words of gift to Nancy, as it would seem natural that they should do if the intention in using them was to qualify what would, without those words, unquestionably be a gift of the absolute estate, but they follow the words empowering her to use and dispose of the property, and, therefore, there is at least a doubt as to which member of the sentence they were intended to qualify. It may

be true, as a general rule, that such qualifying words will apply
to all the different members of the sentence to which they are
annexed, and are not to be limited to that member of the sentence
immediately preceding such words, but where, as in this case,
there are other terms in the will which demand a different con-
struction from that which would result from applying the quali-
fying words to the entire sentence, then they must be confined to
that member of the sentence which immediately precedes the
qualifying words; and this results from the well-settled rule
that a will must be so construed as a whole, as to give effect
to every part, if possible.

It is argued that if the will had not contained the words
" during her natural life," there would have been no doubt that
Nancy would have taken an estate in fee, and that these words
must have been inserted for some purpose, and that the only
purpose of inserting them was to limit the estate which the pre-
vious words would have created. There would be very great
force in this view if it were not possible to conceive of any
other purpose in inserting the words in question. But, is that
so? Bearing in mind, as we must do throughout this discus-
sion, that we are undertaking to construe the language of one
who was manifestly not capable of expressing his intentions in
apt and proper words, and that, as we have seen, there are the
strongest indications in the other parts of the will that the tes-
tator intended to give to his daughter an estate in fee, let us
inquire whether the words in question could not have been used
for some other purpose than that of cutting down the estate to a
mere life-estate. Might not the testator have supposed that,
inasmuch as the estate he intended for his daughter was to be
burdened with the charge of supporting her mother, she would
not have the right to use and dispose of the same as she might
think proper during her life, without special power so to do, and,
therefore, these words were inserted for the purpose of giving
her that power, provided she maintained and supported her
mother? Or, might not the testator have supposed that some
such provision was necessary to prevent his daughter from wast-
ing the estate and thereby defeating his primary object—the sup-
port of his widow; and hence, the power of disposition was

given to her during her life only, on the condition that she carried, out the testator's main object by providing for the support of the old lady? The location of the words in the sentence seem to point to some such conclusion, and, if so, then the insertion of the words in question cannot have the effect of cutting down the estate of Nancy to a life-estate.

It is very true that if the testator intended to give his daughter an estate in fee, there was no necessity to give her the power to use and dispose of it as she might think proper, as that would follow as a necessary incident to the estate created; but it very frequently happens that we find in a will drawn by one unskilled in the preparation of such documents, terms used which are wholly unnecessary to effect the object which the testator had in view. A striking instance of this is found in the will now under consideration, where the testator provides for the support of his widow "during her life," and when such unnecessary terms are found in a will, they ought not to be allowed to defeat the manifest intent of the testator, as ascertained from an examination of the will as a whole, where it is possible to put such a construction upon those terms as will not conflict with such manifest intent, even though such construction may not be the one which such terms naturally and usually require.

We are, therefore, of opinion that under a proper construction of the will of William Canedy, his daughter, Nancy Canedy, took an estate in fee, and not a life-estate merely.

But, if it be assumed that Nancy Canedy took an estate for her life only, the next inquiry is whether she took such estate with power to dispose of the same absolutely, or only the power to dispose of it for the term of her natural life. As is said in *Sugd. Pow.* 459, cited with approval in *Fronty* v. *Fronty, Bailey Eq.* 518: "In considering the extent of a power, the intention of the parties must be the guide." The question, then, is, What was the intention of the testator in conferring the power here in question upon his daughter? Was it simply to authorize her to sell the life-estate, or was it for the purpose of enabling her to make an absolute disposition of the property, if she thought proper to do so? In determining this question, it must be remembered that the property did not consist of land only, but

it was all the real and personal property, of every description whatsoever, which the testator owned; and hence, if the power should be limited to the disposition of the life-estate only, then the devisee and legatee could not sell or dispose of any portion of the property absolutely. It can scarcely be supposed that the testator, in giving his entire estate to his daughter with the power to use and dispose of it as she might think proper, with the purpose, primarily, of providing a support for her mother, intended so to hamper it as to prevent his daughter from selling any greater interest than a life-estate in any portion of it, and thus materially decrease the means of accomplishing his primary object.

Again, if the estate given to the daughter was an estate for her life, there would have been no necessity whatever to invest her with power to dispose of such estate, for that she would have, as owner, without the empowering words; and it is difficult, if not impossible, to conceive of any other reason for creating the power than that of enabling the life-tenant to make an absolute disposition of such portions of the estate as she might think proper to dispose of. As is said in *Sugd. Pow.* 458 : "A general power to a tenant for life to grant a term or estate, without specifying the duration of it, will enable him to grant a term beyond his own life, although it defeat the remainders over, for otherwise the power would be merely idle and void, as every tenant for life may alien the estate during his own life." Here the case is much stronger, as there is no remainder over to be defeated. We think it clear that, if the estate of Nancy should be construed to be a life-estate merely, then the effect of the power was to enable the life-tenant to dispose of the estate absolutely and not for her life only, provided she make such disposition " during her natural life."

The cases of *Smith* v. *Bell*, 6 *Pet.* 74; *Brant* v. *Virginia Coal and Iron Company*, 93 *U. S.* 326 ; and *Boyd* v. *Strahan*, 36 *Ill.* 355, relied upon by the respondents to support a contrary view as to the extent of the power here in question, are not, in our judgment, sufficient for that purpose. In the first place we must remember that while a decided case may aid us in ascer-

U

taining the rules of construction, unless it is in every respect like the one under consideration, which rarely happens, it cannot be allowed to have a controlling effect, inasmuch as the object should be in every case to ascertain the intention of the testator from the words which he had used, and unless the language to be construed is identical in both cases, the authority cited, though it may aid us in reaching a proper conclusion, cannot be regarded as absolutely controlling.

In *Smith* v. *Bell*, the only question made was as to the nature of the estate created—whether a fee or a life-estate merely—and there was no question raised as to the extent of the power. Therefore all that is said upon that subject was *obiter dicta*, and, though entitled to great consideration, is not authoritative. In that case, too, there was a remainder over, a very material matter, and was the principal ground upon which the decision was rested. But here there is no remainder over, nor is there a residuary clause.

In *Brant* v. *Virginia Coal and Iron Company*, the words of the will were: "I give  *  *  *  to my wife, Nancy Sinclair, all my estate,  *  *  *  to have and to hold during her life, and to do with as she sees proper before her death"—very different from the words used in Canedy's will. The words used were the apt and technical words by which a life-estate is created, and there could be no doubt as to the nature of the estate which the wife took. So, too, the empowering words were different from those used in the case now in hand. The wife was given a life-estate in express terms, and it was that which she was authorized "to do with as she sees proper before her death," and therefore she could only dispose of the life-estate. But here the estate is given to Nancy Canedy in terms which would carry the fee, and then follow the empowering words.

In *Boyd* v. *Strahan* there were two clauses in the will, in one of which the testator gave to his wife certain property absolutely, and in the other he gave her certain other property "to be at her own disposal, and for her own proper use and benefit during her natural life." The decision seems to have turned upon the fact that there were two clauses in which the testator used different language, thereby showing an intent to draw a distinction, and

that by the latter he only intended his wife to take a life-estate with only the incidents of such estate.

If, then, the estate given to Nancy be regarded as a life-estate, with power during her life to dispose of the same absolutely, the exercise of such power in conveying the land in question to the appellants, Jones and Riddle, conferred upon them the fee. *Pulliam* v. *Byrd,* 2 *Strobh. Eq.* 142; *Scott* v. *Burt,* 9 *Rich. Eq.* 360, and the authorities cited in those cases. And such being the case, it is clear that the actions in these cases cannot be sustained, and the complaints should have been dismissed.

The judgment of this court is that the judgments of the Circuit Court in both of the cases above stated be reversed, and that the complaints be dismissed.