# SURROGATE'S COURT.

## In the Matter of the Estate of WOLFE FERNBACHER, deceased.

*Executors — Code of Civil Procedure, sections 2685, 2686, 2687 — When letters of executors may be revoked for misconduct — Conduct which will authorize their removal pending accounting proceedings.*

In construing a will whose provisions are fully set forth *infra ;*

*Held,* that the testator's widow was given a life estate simply, with power to receive and enjoy only the interest and income of the principal which at her death was to go to the testator's children.

*Held,* also, that under the circumstances here disclosed, the conduct of the executor in turning over the entire estate to the testator's widow for her own use and enjoyment, without exacting from her any security for the protection of the interests of the remainderman, was such wasteful and improvident management of the estate as to demonstrate the unfitness of such executors for the due administration of their trust, and to justify the revocation of their letters.

*It seems,* that although the general practice is to defer the determination of an application for the revocation of testamentary letters pending accounting proceedings, until such proceedings have terminated, yet under certain circumstances executors may be removed during the pendency of such proceedings.

*New York county, November,* 1885.

*Lauterbach & Spingarn,* for executors.

*Jacob Marks,* for contestant.

ROLLINS, *S.*—The issues raised by the objections interposed to the accounts of Nathan Fernbacher, executor, and Regina Fernbacher, executrix of this estate, are now on trial before a referee appointed by the surrogate. Pending such trial, the party at whose instance the accounting was ordered seeks the revocation of the testamentary letters heretofore issued to the accounting parties and to Samuel Abraham, their co-execu-

tor. The ground of this application is the alleged waste and misappropriation by the executors, of the property and assets of the estate and the improvident management of its affairs. The action of her associates in turning over and suffering to be turned over to the executrix individually, and for her own use and enjoyment, the entire estate (after payment of certain legacies bequeathed by the third and fourth clauses of the will, and after certain disbursements specified in the account), and the action of the executrix herself in converting such property to her own use, are the main grounds upon which the petitioner relies in this proceeding.

In determining whether those grounds will support the revocation of letters, it is necessary to construe certain provisions in the testator's will. Of the authority of the surrogate in this regard, under such circumstances as the present, I have no doubt. The reasons that justify the exercise of such jurisdiction in proceedings for the judicial settlement of executor's accounts are equally applicable here. Those reasons are set forth in *Tappen* agt. *M. E. Church* (3 *Dem.*, 187).

The testator's will contains the following provisions:

"*First.* I give and bequeath to my wife, Regina Fernbacher, all my real and personal estate of whatsoever nature and wheresoever situate, for her life, she to have the same power of sale and control over said property as I could have in my own proper person, during her said life estate.

"*Second.* I give and bequeath to my children or their heirs, share and share alike, all the rest, residue and remainder of my real or personal property in fee absolutely and forever which shall remain after the life estate given in the first provision of this my will to my wife Regina Fernbacher.

"*Third.* It is my will and I give and bequeath to my daughter, Pauline Fernbacher, $1,000 of the insurance which is now on my life in addition to that portion of my real and personal property which she shall be entitled to receive under the second provision of this my will.

"*Fifth.* It is my will and I direct that my sons carry on the

Matter of Fernbacher, deceased.

business in which I am now engaged, without change, so long as my wife Regina Fernbacher thinks best.

"*Sixth.* It is my will that my said wife Regina Fernbacher shall have power, and she is hereby authorized in her discretion to pay to all or any one of my children, at any time during her life, all or any part of the share or shares to which all or any one of my said children may be entitled in my real or personal estate under the second provision of this my last will and testament.

"*Seventh.* I appoint my wife Regina Fernbacher executrix and Nathan Fernbacher and Samuel Abraham executors of this my last will and testament, with full power to sell, at public or private sale, at such times and upon such terms and in such manner as to them shall seem meet, in order that the terms of this my last will may be carried out, any and all of the real estate or personal property of which I shall die seized and possessed."

Although the testator left him surviving several children, it is claimed by counsel for the respondents, that after payment of debts and expenses of administration, the testator's widow, by virtue of the first clause above quoted from the will, acquired the absolute title to all the property left by her husband and to the proceeds of such portion thereof as had been or might thereafter be sold, either under the power given by clause first or under that given by clause sixth; and the respondents' counsel insists that if this contention is erroneous, and if the interest of the widow is to be considered as limited to a life estate, she nevertheless has at all times been authorized to exercise for her own benefit absolute "power and control" over the property of the estate, and by consuming the same if she saw fit so to do, to defeat the possibility of remainder to the children.

Neither of these propositions commands my approval.

The grant in clause first of "the same power of sale and control over said property," as the testator himself possessed, does not, when taken in connection with its immediate context, and with after provisions of the will, enlarge to a title absolute the

interest which is expressly given Mrs. Fernbacher for life, nor does it authorize either complete or partial absorption by her of the principal of the estate.

In support of the claim of the absolute character of the widow's interest and of the invalidity of the dispositions in behalf of the children, several cases have been cited by counsel. In these cases the well known principle has been recognized, that where a testator has made an unqualified bequest or devise, and has thus evinced his intention that the beneficiary should have absolute property in the thing given, a subsequent limitation over is void, because repugnant to the original disposition. Such is the doctrine of *Helmer* agt. *Shoemaker* (22 *Wend.*, 137), *Jackson* agt. *Robins* (16 *John.*, 538), *Annin* agt. *Vandoren* (14 *N. J. Eq.*, 135), *Downey* agt. *Borden* (36 *N. J. Law*, 460), *Stuart* agt. *Walker* (72 *Me.*, 145), *Ide* agt. *Ide* (5 *Mass.*, 500), *Paterson* agt. *Ellis* (11 *Wend.*, 259), *Norris* agt. *Beyea* (13 *N. Y.*, 273, 286), *Dutch Church* agt. *Smock* (*Sexton Ch.* [*N. J.*], 148), *Jones* agt. *Bacon* (68 *Me.*, 34), *Campbell* agt. *Beaumont* (91 *N. Y.*, 464).

But I think it too plain for argument that, whatever may be the true construction of this will, the testator's widow has not acquired by the clause, now under discussion, such an absolute property in this estate as to invalidate the gift over. It is another question, however, whether she is limited to a bare life estate, with the right to demand and enjoy nothing more than the interest and income of a principal that is to go to others at her death, or whether her life estate is coupled with a power on her part to receive such principal in her life-time, and to appropriate it wholly, or in part, to her own use, so that only such portion of it as may not, at her death, have been disposed of, will pass to the children under the second clause of the will.

*Wright* agt. *Miller* (8 *N. Y.*, 9, 24), decided in 1853, was a case in which A. had conveyed to a trustee certain real estate with a power during A.'s life, and with A.'s consent, to lease or sell the same, and, after making certain disbursements from the proceeds, to pay over the balance "for the reasonable support and

maintenance of the grantor as she may require the same, and as to the residue thereof, if any there shall be, then upon trust," &c. The court of appeals held that the limitation over for the benefit of A.'s children was valid, the power of disposition retained by A. being limited to so much of the proceeds of the property as might be needed to defray the expenses of her reasonable support and maintenance during her life.

In 1872 the supreme court of New Hampshire in *Burleigh* agt. *Clough* (52 *N. H.*, 267), held, that where a testator gave his wife all his estate "to her use and disposal during her natural life" with a gift over of "what is remaining at her decease," the widow took an estate for life, together with a power practically to defeat the estate of the remainderman, but that the gift in remainder was nevertheless valid as to anything that she might leave at her decease.

In 1875 our supreme court of the fourth department decided *Bell* agt. *Warn* (4 *Hun*, 406). A testator had bequeathed $1,250 to his daughter, providing that the same should be invested, and that the interest thereon should be paid to her during her life semi-annually, and that if, from sickness or want, there was need to resort to the principal for her support, the executors should do so, even to the exhaustion of the entire fund. The will further provided for a gift over of any portion of the $1,250 that might remain at the daughter's death. It was held that this gift over was good, though the life interest of the first taker was coupled with a power of disposing of the whole estate if such disposition should be needed for her maintenance.

In *Terry* agt. *Wiggins* ([1872], 47 *N. Y.*, 512), a testator gave the residue of his real and personal estate to his wife "for her own personal and independent use and maintenance, with full power to sell or otherwise dispose of the same, if she should require it or deem it expedient so to do." He authorized his executors to invest whatever residue there might be at her decease, &c. By a previous clause in his will, the testator had devised to his widow certain real estate "for her sole and absolute use and disposal." The court held that the terms first above quoted

were to be discriminated from those quoted later, and that the widow took only a life interest in the residue; the power of disposal not operating to enlarge her estate to absolute ownership, and simply enabling her to encroach upon the corpus of the estate for whatever might be necessary for her personal use and maintainance.

The language of a will construed in 1873 by our court of appeals, in *Taggart* agt. *Murray* (53 *N. Y.*, 233), was as follows: "All my remaining property I give to my daughter, Cornelia, for her support and comfort, to be held and controlled by her, and at her death to pass to her heirs, or if she leaves no heirs, to be disposed of by her will to whom and for what purpose she deems right and proper." *Held*, that the testator intended a gift of life estate only, the power of disposition by will being superadded, limited, however, upon the event of the life tenant's leaving no heirs.

In 1876 the court of appeals in *Smith* agt. *Van Ostrand* (64 *N. Y.*, 278), held that a testator's bequest to his wife of a certain sum of money "for her support during her natural life, "and his direction that, upon her death, the "said dower" should be transferred to his three children, when taken in connection with the following provision— "fifty dollars of the above named sum shall be paid her as soon as possible after my decease, and the remainder on or about six months after"—must be construed as a gift of so much of the principal fund as might be necessary for his widow's support and so much only; and that the gift of the remainder, subject to the exercise of the power, was valid and effectual.

*Thomas* agt. *Pardee* (12 *Hun*, 151), was decided in 1877. There a testator gave his wife all his estate, "to be possessed and used by her at her discretion and for her support and comfort during her natural life, having confidence in her that it will be used and retained, and the amount or increase and the residue left sacred to the purposes," &c. This was followed by a gift over of what might be left by the widow at her decease. She was declared entitled to draw principal and interest, so far as the

same might be necessary, for her support, but the gift over was sustained.

*Flanagan* agt. *Flanagan* (8 *Abb. N. C.*, 413), was determined in 1880. By the will there construed a testator had given one-third of the residue of his estate to his wife "to be hers absolutely." He had also given her "the use of all the remainder during her life, and the portion left of such remainder to A. B., &c." It was held, that the words "left of such remainder" implied a right superadded to the rights of a life-tenant to make disposition of the principal, even to its complete exhaustion and the consequent defeat of the limitation over; but it was, nevertheless, held, that such limitation was a valid disposition.

From the cases above cited the case at bar can be clearly distinguished. I find in the language of the will before me nothing that warrants the interpretation that the widow of this testator is entitled to any portion whatever of the principal estate wherein she is given a life interest. By the first clause of the will, on the contrary, whether it is considered by itself or in the light of the remaining clauses, it seems to me that a life interest pure and simple is intended to be conveyed.

In the well known case of *Bradley* agt. *Westcott* (13 *Vesey*, 445), Sir William Grant, as Master of the Rolls, construed a will whereby a testator gave certain property to his wife "for and during the term of her natural life, to be at her full, free and absolute disposal and disposition during her natural life." The widow was also given a power of appointment. In default of its exercise there was a gift over to certain designated persons. The court said: "As the testator has given to her (his wife) in express terms an interest for life, I cannot, under the ambiguous words afterward thrown in, extend that interest to the absolute property. I must construe the subsequent words, with reference to the express interest for life previously given, that she is to have as full, free and absolute disposition *as a tenant for life can have.*"

In *Smith* agt. *Bell* (6 *Pet.*, 68), where a testator had given his personal estate to his wife "to and for her own use and benefit

and disposal absolutely, the remainder of said estate after her decease to be for the use" of the testator's son, it was held that the wife took a life estate only. MARSHALL, C. J., pronouncing the opinion of the court, said: "If the first bequest is to take effect according to the obvious import of the words taken alone, the last is expunged from the will. The operation of the whole clause will be precisely the same as if the last member of the sentence were stricken out; yet both clauses are equally the words of the testator, are equally binding and equally claim the attention of those who may construe the will. We are no more at liberty to disregard the last member of the sentence than the first.

The first part of the clause, which gives the personal estate to the wife, would undoubtedly, if standing alone, give it to her absolutely. * * * The difficulty is produced by the subsequent words. They are: 'Which personal assets I give and bequeath unto my said wife, to and for her own use and benefit and disposal absolutely.' The operation of these words, when standing alone, cannot be questioned. But suppose the testator had added the words 'during her life.' These words would have restrained those which preceded them; and have limited the use and benefit, and the absolute disposal given by the prior words, to the use and benefit, and to a disposal for the life of the wife. * * * Even the words 'disposal absolutely' may have their absolute character qualified by restraining words, connected with, and explaining them to mean, such absolute disposal as a tenant for life may make."

*Brant* agt. *Virgina Coal Co.* (3 *Otto*, 320), was a case in which a testator had bequeathed to his wife all his real and personal estate "to have and to hold during her life and to do with as she sees proper before her death." FIELD, J., pronouncing the opinion of the court, said: "The interest conveyed was only a life estate. The language used admits of no other conclusion, and the accompanying words, 'to do with as she sees proper before her death,' only conferred power to deal with the property in such manner as she might choose *consistently with that estate.*" The learned justice added that "where a power of dis-

position accompanies a bequest or devise of the life estate, the power is limited to such disposition as a tenant for life can make, unless there are other words clearly indicating that a larger power was intended."

In *Boyd* agt. *Strahan* (36 *Ill.*, 355), a testator's bequest to his wife of all his personal property "to be at her own disposal and for her own proper use and benefit during her natural life," was held to give her a life estate simply.

The following testamentary provision was under consideration in *Corey* agt. *Corey* (37 *N. J. Eq.*, 198): "I give all my estate to my wife for her sole use and benefit for and during her natural life, to be under her control and used by her as she sees fit to use the same, and in case she should find it necessary or see fit to dispose of any part or all of the same, I empower her, &c. * * * After the death of my wife, I order my executors to sell all my estate remaining at her decease and to dispose of the proceeds as follows," &c. Held, that the widow was entitled to a life estate only.

A similar construction was in *Stuart* agt. *Walker* (72 *Me.*, 145), put upon the words following: "All my estate, real and personal, with the right to use, occupy, lease, exchange, sell or otherwise dispose of the same according to her own will and pleasure during her life-time, and so much of the said estate as may remain unexpended and undisposed of by my wife at my decease, I give," &c.

It is claimed by counsel for the executors that by sections 81 and 85, title 2, chapter 1, part 2, Revised Statutes (3 *Banks* [7th ed.], 2189), this testator's widow obtained under the will an absolute fee or interest, subject only to the taking effect of the remainder given to the children, in the event that the power of sale should not be exercised in the widow's life-time.

But these sections by their very terms are only operative where there is an "absolute power of disposition not accompanied by any trust," and in my judgment have no application to the case at bar.

Upon the authorities above cited, I hold that it has never been possible for Mrs. Fernbacher, by the exercise of any power derived from the will of her husband to acquire any personal interest in the property left by him at his death, or in the proceeds of its sale, than such as pertains to a life estate.

The conclusion thus warranted by decided cases as to the meaning of the first clause of this disputed paper is discovered upon examination to be in harmony with the clauses that follow.   The second clause bequeaths to the children "in fee absolutely and forever the residue and remainder of the testator's real or" (i. e., and) "personal property which shall remain after the life estate given in clause first.   Here is a disposition of the remainder after a precedent life estate; that is, of what is left after the life estate has been carved out of the fee.   There is in these words no suggestion that the life beneficiary, by wielding the power of disposition, can appropriate the entire estate to her own benefit and that the children are to enjoy only such part of the property as the widow may chance to leave at her death. Nor are the provisions in the third, fifth and sixth clauses in harmony with such interpretation.   Those provisions, in connection with clause second, show that the testator intended to give his wife a simple life interest, with power of converting the character of the property of the estate, and at her death to give his children the principal of such estate, whether it should then wear its original shape or should theretofore have assumed another.

It is unnecessary to cite authorities in support of that established canon of interpretation, that, in construing a will, the testator's intention must be sought from the instrument as a whole, and that its several provisions must be accorded such enlarging, restricting or qualifying effect, as seems most consistent with the purposes of its maker.

When this will is thus construed there is scarcely room for doubt that the power of sale given to the widow, and that given subsequently to the executors, were intended to be exercised, not for the widow's benefit exclusively, but for the benefit of

the remaindermen as well, who will be entitled at their mother's death to receive, without impairment or diminution, the principal estate of which she will have had the life enjoyment. In this sense, the power conferred may justly be regarded as one of trust, with which sections 81 and 85, above cited, are in no wise concerned (*Coleman* agt. *Beach*, 97 *N. Y.*, 558; *Thomas* agt. *Pardee*, *Smith* agt. *Van Ostrand*, *Flanagan* agt. *Flanagan*, *supra*).

Now, in view of the relation which the widow and children of this decedent sustained towards the estate, it was clearly the duty of the executors to collect, as soon as practicable, the personal property left by decedent, including, of course, the proceeds of any of the realty sold by them or coming to their hands. This duty they owed to the remaindermen, who were entitled to be informed of the true nature, condition and value of the assets, and to have such of them as were outstanding realized and recovered; and this entirely irrespective of the question whether the executors were or were not authorized to turn over all the property of the estate to the life beneficiary without security for its preservation for those entitled in remainder.

Now, it appears that in 1877 an account was filed with the surrogate by Nathan Fernbacher, Regina Fernbacher and Samuel Abraham as executors. Another was filed by Nathan Fernbacher and Regina Fernbacher in the pending accounting proceeding before its issues were submitted to the referee. In the place of the latter a third has been since submitted.

The latest account shows that, in that of 1877, the executors failed to include certain assets of whose existence they must then have been advised. The statement in schedule G of the last account of the transfer by the accounting parties to the widow of such part of the assets contained in schedule A as had not been applied to the payment of debts and expenses of administration, shows that such assets were so transferred with the knowledge that the widow was about to convert them to her own use and with the object of affording her opportunity

of so doing.   In the account of 1877 the business of the de-
cedent was alleged to have been sold by the widow to her sons
Nathan, Isaac and Philip for $6,000.   In the account recently
submitted to the referee that business is declared to have been
sold for the sum of $10,000, payable on demand.   It is further·
alleged that "no demand of payment has ever been made, as
the widow was directed by the testator prior to his death to give
the business to his sons should she see fit, and as she was author-
ized to do under his will."

No direction of the testator, such as is thus described, would
have been effectual to confer the authority claimed, nor is any
such authority conferred by the will.   The conduct of the ex-·
ecutors in omitting, from the first account, assets with which
they should then have charged themselves, and which, as I
think, they intentionally omitted, the subsequent conduct of·
these accounting parties in falsely representing the sum for·
which the testator's business was disposed of, in neglecting to
realize, or to make any effort for realizing, the amount for which
the account last filed declares the business to have been actually
sold, and in surrendering the entire assets of the estate to the·
widow, furnish sufficient proof of the improvident management
of the estate, and of misconduct on the part of the executors
to justify their removal from office.

It is urged by counsel for the respondents that, even if his·
contention respecting the extent of Mrs Fernbacher's interest in
the estate is erroneous, her co-executors were not at fault in surren-·
dering the estate into her hands without requiring security for·
the remaindermen.

The law upon this general subject does not seem to be well-·
settled.

In *Westcott* agt. *Cody* (5 *John.*, 350), the chancellor said:·
"Formerly the legatee, entitled to remainder after the estate for
life, was allowed to call upon the legatee for life, not only for·
an inventory, but for security that the goods should be forth-·
coming at his decease.   But the rule of practice has since been
altered on that point."   Some years later in *Covenhoven* agt.·

Matter of Fernbacher, deceased.

*Schuler* (2 *Paige*, 122, 132), the chancellor said : "The modern practice in such cases" (that is, in cases of bequest for life with limitation over of specific articles), "is to require an inventory of the articles, and security is not required unless there is danger that the articles may be wasted or otherwise lost to the remaindermen."

It would seem from later decisions of the courts of this state, that, under ordinary circumstances, executors should not turn over property to one who has simply a life estate therein, when such property is given in remainder to another, without obtaining from the first taker security for the protection of the remainderman (*Tyson* agt. *Blake*, 22 *N. Y.*, 558; *Montfort* agt. *Montfort*, 24 *Hun*, 120; *Livingston* agt. *Murray*, 68 *N. Y.*, 485).

Some of the clauses of this will, however, indicate that it was the testator's design to entrust to the life beneficiary the full possession and control of this estate. Where there is an expression in a will of such an intention, its executors are warranted unless there are special circumstances making such a course hazardous in surrendering the principal of the estate to the care of the life-tenant without security (*Fiske* agt. *Cobb*, 6 *Gray*, 144; *Weeks* agt. *Weeks*, 5 *N. H.*, 326; *Tagard* agt. *Piper*, 118 *Mass.*, 315; *Flanagan* agt. *Flanagan, supra; Smith* agt. *Van Ostrand, supra*).

The ground upon which the severity of the old practice has been somewhat abated, is doubtless this: that for the court to decree security in all cases, would often defeat the purposes of the testator. But whenever it has appeared that property bequeathed for life, with remainder over, has been in danger of being wasted, secreted or removed, the courts have held that the interests in remainder were entitled to be protected by compelling the life-tenant to give security (2 *Perry on Trusts* [3*d ed.*], sec. 541).

The same regard to a testator's intentions which led the chancery court to abandon the practice of requiring security, as of course, upon the mere application of a remainderman whose interests were in no practical danger, demand the exaction of

security where the testator's intentions are otherwise likely to: be frustrated by the conduct of the tenant for life.

Now, in this case, there is the exceptional feature of the purpose on the part of the life beneficiary (a purpose well known to the other executors, and practically countenanced by them) of wasting the fund and of destroying the interests of the remaindermen therein, by converting and appropriating it to her individual use and benefit.

Under these circumstances it seems to me that the executors were grossly remiss in failing to obtain security for the secure transmission to the remaindermen of the principal of this estate.

This failure I regard as evidence of misconduct and improvident management by the executors, and of unfitness for the due administration of their trusts.

It is the general practice to defer the determination of an application of this character, pending accounting proceedings, until such proceedings have terminated, but the undisputed facts and the disclosures of the papers submitted herein, satisfy me that no injustice will be done to these executors by directing their immediate removal.

Let a decree be entered accordingly.

