BRANT *v.* VIRGINIA COAL AND IRON COMPANY *et al.*

1. Where a testator made a bequest to his wife of all his estate, real and personal, "to have and to hold during her life, and to do with as she sees proper before her death," the wife took a life-estate in the property, with only such power as a life-tenant can have, and her conveyance of the real property passed no greater interest.

2. For the application of the doctrine of equitable estoppel, there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as amounts to constructive fraud, by which another has been misled to his injury.

3. Where the estoppel relates to the title of real property, it is essential to the

application of the doctrine, that the party claiming to have been influenced by the conduct or declarations of another was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there is no estoppel.

APPEAL from the Circuit Court of the United States for the District of West Virginia.

In April, 1831, Robert Sinclair, of Hampshire County, Va., died, leaving a widow and eight surviving children. He was, at the time of his death, possessed of some personal property, and the real property in controversy, consisting of one hundred and ten acres. By his last will and testament he made the following devise: " I give and bequeath to my beloved wife, Nancy Sinclair, all my estate, both real and personal; that is to say, all my lands, cattle, horses, sheep, farming utensils, household and kitchen furniture, with every thing that I possess, to have and to hold during her life, and to do with as she sees proper before her death." The will was duly probated in the proper county.

In July, 1839, the widow, for the consideration of $1,100, executed a deed to the Union Potomac Company, a corporation created under the laws of Virginia, of the real property thus devised to her, describing it as the tract or parcel on which she then resided, and the same which was conveyed to her " by the last will and testament of her late husband." As security for the payment of the consideration, she took at the time from the company its bond and a mortgage upon the property. The mortgage described the property as the tract of land which had on that day been conveyed by her to the Union Potomac Company.

In 1854 this bond and mortgage were assigned to the complainant and Hector Sinclair, the latter a son of the widow, in consideration of $100 cash, and the yearly payment of the like sum during her life. Previous to this time, Brant and Hector Sinclair had purchased the interest of all the other heirs, except Jane Sinclair, who was at the time, and still is, an idiot, or an insane person; and such purchase is recited in the assignment, as is also the previous conveyance of a life-interest to the company.

In July, 1857, these parties instituted suit for the foreclosure of the mortgage and sale of the property. The bill described the property as a tract of valuable coal land which the company had purchased of the widow, and prayed for the sale of the estate purchased. Copies of the deed of the widow and of the mortgage of the company were annexed to the bill. In due course of proceedings a decree was obtained directing a sale, by commissioners appointed for that purpose, of the property, describing it as. "the lands in the bill and proceedings mentioned," if certain payments were not made within a designated period. The payments not being made, the commissioners, in December, 1858, sold the mortgaged property to one Patrick Hammill, who thus succeeded to all the rights of the Union Potomac Company.

The defendant corporation, the Virginia Coal and Iron Company, derive their title and interest in the premises by sundry mesne conveyances from Hammill, and in 1867 went into their possession. Since then it has cut down a large amount of valuable timber, and has engaged in mining and extracting coal from the land, and disposing of it.

Brant, having acquired the interest of Hector Sinclair, brought the present suit to restrain the company from mining and extracting coal from the land, and to compel an accounting for the timber cut and the coal taken and converted to its use.

The court below dismissed the bill, whereupon Brant brought the case here.

Argued by *Mr. John J. McKinnon* and *Mr. George W. Brandt* for the appellant.

Under the will, Nancy Sinclair took only a life-estate. The testator having failed to devise the fee, it descended to his heirs. She had no power, nor did she attempt to divest them of it.

Real and personal property of an intestate is, under the statute of Virginia, distributed equally among his heirs-at-law. The rule is the same where the owner in fee of lands devises them to another for life, without making any specific disposition of the inheritance.

A rule never to be lost sight of in the construction of wills is, that the heir is not to be disinherited without an express

devise, or implication importing so strong a probability, that an intention to the contrary cannot be supposed.   1 Redf. on Wills, p. 425, n. 5, p. 434, sect. 18; *Allen's Ex'r* v. *Allen*, 18 How. 391.

Negative words are not sufficient to exclude the title of the heir.   There must be an actual gift to some other definite object.   *Fitch* v. *Weber*, 6 Hare, 145; 1 Redf. on Wills, 425.

Courts will look at the circumstances under which the devisor makes his will, as to the state of his property, his family, and the like.   1 Redf. on Wills, 425.

In a deed, the words govern the intention.   In a will, the intention governs the words.   *Edwards* v. *Bibb*, 43 Ala. 666.

It is an old and equitable rule, that the reversion is not to be defeated, or the heirs despoiled by implication, without express words.   *Dashwood* v. *Peyton*, 18 Ves. 40.

No words authorizing Mr. Sinclair to sell and convey the fee can be found in the will, either in connection with the life-estate or elsewhere.

The leading case of *Bradley* v. *Westcott*, 13 Ves. 445, is strikingly analogous to that at bar.   In both there is an express devise for life, followed by an ambiguous authority or discretion; and in each the authority or power is confined to natural life.

Applying the doctrine in that case to this, it cannot be contended that the still less potent and greatly more ambiguous language following the express devise for life in this case is to have a different meaning or be differently construed.   *Smith* v. *Bell*, 6 Pet. 80, *Gregory* v. *Cowgill*, 19 Mo. 415, *Boyd et al.* v. *Strahan*, 36 Ill. 355, *Seigwald* v. *Seigwald*, 37 id. 431, and *Cox et al.* v. *Butt et al.*, 22 Ark. 568, are to the same effect as *Bradley* v. *Westcott, supra,* and settle the question as to what estate Mrs. Sinclair took, and what power she had under the will.

The complainant is in no manner or way estopped by reason of the foreclosure proceeding or by the sale thereunder.   To estop him in any view of the case, the defence must show that his language or conduct was the direct motive or inducement to the purchase.   This has not even been attempted.   *Ware* v. *Cowles*, 24 Ala. 446; *Jones* v. *Cowles*, 26 id. 612; *Brewer*

v. *Brewer*, 19 id. 431; *Morton* v. *Hodgdon*, 32 Me. 327; *Cambridge Inst.* v. *Rittlefield*, 6 Cush. 216; *Watkins* v. *Peck*, 13 N. H. 360; *Darlington's Appeal*, 1 Harris, 430; *Carpenter* v. *Stilwell*, 1 Kern. 61.

Ignorance of the true state of the title on the part of the purchaser must concur with wilful misrepresentation or fraudulent concealment on the part of the vendor. *Crest* v. *Jack*, 3 Watts, 238; *Hepburn* v. *McDowell*, 17 Serg. & R. (Pa.) 383; *Ferris* v. *Coover*, 10 Cal. 509; *Casey* v. *Inloes*, 1 Gilm. 430; *Lawrence* v. *Brown*, 1 Seld. 394; *Hill* v. *Epley*, 7 Casey, 331; *Goodson* v. *Beacham*, 24 Ga. 150; *Parker* v. *Parker*, 2 Met. 421.

No estoppel will arise in the absence of actual fraud, unless the purchaser was not only ignorant of the true state of the title, but had no means of acquiring knowledge by a recourse to the record. *Bigelow* v. *Topliff*, 25 Vt. 273; *Carter* v. *Champion*, 8 Conn. 554.

Argued by *Mr. E. Wyatt Blanchard* for the appellee.

Notwithstanding the assumed defect in Mrs. Sinclair's original title under the will, the appellant is entitled to no relief, and is estopped from denying the validity of the appellee's title: first, as privy in estate of Mrs. Sinclair, under whom he claimed in the foreclosure proceedings; second, by his own declarations of record in those proceedings, his non-assertion at that time of the title he now claims, and by various acts in connection with the foreclosure sale, and subsequently thereto.

It is not necessary to the application of the doctrine of estoppel that fraud in fact should be charged or shown. It rests on a broad principle of equity, which will not permit a party to a transaction, even when made under a mistake of title, to receive its fruits, and afterwards repudiate it. Assertions innocently made, but which mislead others; silence as to conflicting claims, or as to facts which should have been disclosed; recitals in deeds; descriptions of title; covenants; warranties, — all or any will give rise to the application of this principle for the protection of a purchaser, in the class of cases known as cases of constructive fraud.

It is a principle of universal application, that a person assenting to an act, and deriving and enjoying a title under it,

shall not be permitted to impeach it.   2 Wash. Real. Prop. b. 3, p. 472; 11 How. 322, 325, 326; 5 Johns. Ch. 184; 1 id. 354; 12 Wall. 358; 13 id. 291.

Nor can any controlling authority be found for applying the rule *caveat emptor* to this class of cases.

The evidence is uncontradicted, that the sum agreed to be paid to Mrs. Sinclair was at the time the full value of the property in fee-simple, subject to the life-estate reserved by her.   Whatever, therefore, she conveyed was to be paid for as a fee-simple estate.   Her acceptance of the mortgage in fee, to secure the payment of the purchase-money, was a distinct act *in pais*, recognizing the existence of a title in fee in the Union Potomac Company.

In the application of the doctrine of estoppel, the question whether the acts done by the parties are legally effectual is excluded.   The sole question is, What did they intend to do? In this case, the conclusion is irresistible, that Mrs. Sinclair intended to part with the fee for a then fair price.   Her opinions, purposes, or unknown views must yield to the force of her solemn acts; and for the protection of others against her and her privies in estate, if the purchaser believed himself acquiring a fee as against her and them, his estate is a fee.   Although it is not intended to charge that the complainant in this and in the foreclosure case committed the fraud of conducting that proceeding with his present opinion of his title, or with the purpose of selling the lands, receiving the proceeds, and then reclaiming them, the effect is the same as if he had acted with such guilty purpose.   Every line of the record of that proceeding shows that the officers of the court did not sell the life-estate of Mrs. Sinclair, but that they did offer " the lands mentioned in the proceedings," with that life-estate reserved, in such explicit terms, that no successful bidder could fail to conclude that he was the purchaser of the fee.

The power of disposition of Mrs. Sinclair, under the will of her husband, equally affects all descriptions of the property devised.   Nothing is to be found in the will to indicate any purpose on his part to distinguish her dominion over his real and personal estate.

The construction claimed by the appellant requires that the

words of power shall be held to refer to the words creating the estate, so as to read, " to have and to hold during life, and to do with as she sees proper, according to the powers of a life-tenant." When the testator gave all to his wife, to have and to hold during her life, he, without superadded words, gave every power incident to that estate. The appellant, in effect, rejects the words of power, and treats them as surplusage.

That construction rests on the presumed intention of the testator to die intestate as to the remainder of his effects, real and personal, in order that they might pass to his heirs-at-law subject to the life-estate devised to his wife ; but such intention is not to be presumed if any other construction be possible, especially where a devise like this is of the testator's entire estate. 2 Preston on Estates, 103. Where the devise is general, with words added implying a power of disposition, the devisee takes a fee.

Where an express estate for life is given with such words of power added, the devisee takes an estate for life, and the power must be exercised. 2 Preston on Estates, 81, 82 ; Cruise, tit. Devise, c. 13, sect. 5 ; *Jackson* v. *Robins*, 16 Johns. 537 ; *Stevens* v. *Winship*, 1 Pick. 318 ; *Reid* v. *Shergold*, 10 Ves. 370 ; *Guthrie* v. *Guthrie*, 1 Call, 7 ; *Shermer* v. *Shermer's Ex'r*, 1 Wash. 266 ; *Burwell* v. *Anderson*, 3 Leigh, 355 ; 2 Johns. 392 ; *May* v. *Joynes*, 20 Gratt. 692. The power is a distinct gift, and is not limited to a disposition of the life-interest, but will pass the fee. 3 Lomax, Dig. 317 ; 2 Preston, 81, 82 ; 8 Viner's Abr. 234, 235, sects. 2, 3, 4, 9, 8, 14. Nor is any special form of words necessary to give the power of disposition of the fee to the life-tenant.

The current of authority is unbroken, that words of power following a gift for life, and uncontrolled by other parts of the will, give either a fee, or a life-estate with power to dispose of the fee. Mrs. Sinclair's deed, therefore, either conveyed, and was meant to convey, nothing, or was intended to operate according to the legal effect of its words upon the reversion.

MR. JUSTICE FIELD stated the case, and delivered the opinion of the court.

The disposition of the case depends upon the construction

given to the devise of Robert Sinclair to his widow, and the operation of the foreclosure proceedings as an estoppel upon the complainant from asserting title to the property.

The complainant contends that the widow took a life-estate in the property, with only such power as a life-tenant can have, and that her conveyance, therefore, carried no greater interest to the Union Potomac Company. The defendant corporation, on the other hand, insists, that, with the life-estate, the widow took full power to dispose of the property absolutely, and that her conveyance accordingly passed the fee.

We are of opinion that the position taken by the complainant is the correct one. The interest conveyed by the devise to the widow was only a life-estate. The language used admits of no other conclusion; and the accompanying words, " to do with as she sees proper before her death," only conferred power to deal with the property in such manner as she might choose, consistently with that estate, and, perhaps, without liability for waste committed. These words, used in connection with a conveyance of a leasehold estate, would never be understood as conferring a power to sell the property so as to pass a greater estate. Whatever power of disposal the words confer is limited by the estate with which they are connected.

In the case of *Bradley* v. *Westcott,* reported in the 13th of Vesey, the testator gave all his personal estate to his wife for her sole use for life, to be at her full, free, and absolute disposal and disposition during life ; and the court held, that, as the testator had given in express terms an interest for life, the ambiguous words afterwards thrown in could not extend that interest to the absolute property. " I must construe," said the Master of the Rolls, " the subsequent words with reference to the express interest for life previously given, that she is to have as full, free, and absolute disposition as a tenant for life can have."

In *Smith* v. *Bell,* reported in the 6th of Peters, the testator gave all his personal estate, after certain payments, to his wife, " to and for her own use and disposal absolutely," with a provision that the remainder after her decease should go to his son. The court held that the latter clause qualified the former,

and showed that the wife only took a life-estate. In construing the language of the devise, Chief Justice Marshall, after observing that the operation of the words "to and for her own use and benefit and disposal absolutely," annexed to the bequest, standing alone, could not be questioned, said, "But suppose the testator had added the words 'during her natural life,' these words would have restrained those which preceded them, and have limited the use and benefit, and the absolute disposal given by the prior words, to the use and benefit and to a disposal for the life of the wife. The words, then, are susceptible of such limitation. It may be imposed on them by other words. Even the words 'disposal absolutely' may have their character qualified by restraining words connected with and explaining them, to mean such absolute disposal as a tenant for life may make."

The Chief Justice then proceeded to show that other equivalent words might be used, equally manifesting the intent of the testator to restrain the estate of the wife to her life, and that the words, "devising a remainder to the son," were thus equivalent.

In *Boyd* v. *Strahan*, 36 Ill. 355, there was a bequest to the wife of all the personal property of the testator not otherwise disposed of, "to be at her own disposal, and for her own proper use and benefit during her natural life;" and the court held that the words "during her natural life" so qualified the power of disposal, as to make it mean such disposal as a tenant for life could make.

Numerous other cases to the same purport might be cited. They all show, that where a power of disposal accompanies a bequest or devise of a life-estate, the power is limited to such disposition as a tenant for life can make, unless there are other words clearly indicating that a larger power was intended.

The position that the complainant is estopped, by the proceedings for the foreclosure of the mortgage, from asserting title to the property, has less plausibility than the one already considered. There was nothing in the fact that the complainant and Hector Sinclair owned seven-eighths of the reversion, which prevented them from taking a mortgage upon the life-estate, or

purchasing one already executed. There was no misrepresentation of the character of the title, which they sought to subject to sale by the foreclosure suit. The bill of complaint in the suit referred to the deed from the widow to the Union Potomac Company, and to the mortgage executed to secure the consideration; and copies were annexed. The deed described the property sold as the tract conveyed to the widow by the last will and testament of her late husband. The mortgage described the property as the tract of land conveyed on the same day to the mortgagor. The decree ordering the sale described the property as "the lands in the bill and proceedings mentioned." The purchaser was bound to take notice of the title. He was directed to its source by the pleadings in the case. The doctrine of *caveat emptor* applies to all judicial sales of this character; the purchaser takes only the title which the mortgagor possessed. And here, as a matter of fact, he knew that he was obtaining only a life-estate by his purchase. He so stated at the sale, and frequently afterwards. There is no evidence that either the complainant or Hector Sinclair ever made any representations to the defendant corporation to induce it to buy the property from the purchaser at the sale, or that they made any representations to any one respecting the title, inconsistent with the fact; but, on the contrary, it is abundantly established by the evidence in the record, that from the time they took from the widow the assignment of the bond and mortgage of the Union Potomac Company in 1854, they always claimed to own seven-eighths of the reversion. The assignment itself recited that the widow had owned, and had sold to that company, a life-interest in the property, and that they had acquired the interest of the heirs.

It is difficult to see where the doctrine of equitable estoppel comes in here. For the application of that doctrine there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud, by which another has been misled to his injury. "In all this class of cases," says Story, "the doctrine proceeds upon the ground of constructive fraud or of gross negligence, which in effect implies fraud.

And, therefore, when the circumstances of the case repel any such inference, although there may be some degree of negligence, yet courts of equity will not grant relief. It has been accordingly laid down by a very learned judge that the cases on this subject go to this result only, that there must be positive fraud or concealment, or negligence so gross as to amount to constructive fraud." 1 Story's Eq. 391. To the same purport is the language of the adjudged cases. Thus it is said by the Supreme Court of Pennsylvania, that " the primary ground of the doctrine is, that it would be a fraud in a party to assert what his previous conduct had denied, when on the faith of that denial others have acted. The element of fraud is essential either in the intention of the party estopped, or in the effect of the evidence which he attempts to set up." *Hill* v. *Eppley*, 31 Penn. St. 334 ; *Henshaw* v. *Bissell*, 18 Wall. 271 ; *Biddle Boggs* v. *Merced Mining Company*, 14 Cal. 368 ; *Davis* v. *Davis*, 26 id. 23 ; *Commonwealth* v. *Moltz*, 10 Barr, 531 ; *Copeland* v. *Copeland*, 28 Me. 539 ; *Delaplaine* v. *Hitchcock*, 6 Hill, 616 ; *Havis* v. *Marchant*, 1 Curt. C. C. 136 ; *Zuchtmann* v. *Robert*, 109 Mass. 53. And it would seem that to the enforcement of an estoppel of this character with respect to the title of property, such as will prevent a party from asserting his legal rights, and the effect of which will be to transfer the enjoyment of the property to another, the intention to deceive and mislead, or negligence so gross as to be culpable, should be clearly established.

There are undoubtedly cases where a party may be concluded from asserting his original rights to property in consequence of his acts or conduct, in which the presence of fraud, actual or constructive, is wanting ; as, where one of two innocent parties must suffer from the negligence of another, he through whose agency the negligence was occasioned will be held to bear the loss ; and where one has received the fruits of a transaction, he is not permitted to deny its validity whilst retaining its benefits. But such cases are generally referable to other principles than that of equitable estoppel, although the same result is produced ; thus the first case here mentioned is the affixing of liability upon the party who from negligence indirectly occasioned the injury, and the second is the application of the doctrine of

ratification or election. Be this as it may, the general ground of the application of the principle of equitable estoppel is as we have stated.

It is also essential for its application with respect to the title of real property that the party claiming to have been influenced by the conduct or declarations of another to his injury was himself not only destitute of knowledge of the true state of the title, but also of any convenient and available means of acquiring such knowledge. Where the condition of the title is known to both parties, or both have the same means of ascertaining the truth, there can be no estoppel. *Crest* v. *Jack*, 3 Watts, 240; *Knouff* v. *Thompson*, 4 Harris, 361.

Tested by these views, the defence of estoppel set up in this case entirely fails.

The decree of the Circuit Court must be reversed and the cause remanded for further proceedings in accordance with this opinion; and it is so                                          *Ordered.*

MR. JUSTICE SWAYNE and MR. JUSTICE DAVIS dissented.