## In re DREUIL & CO.

(District Court, E. D. Louisiana. May 8, 1913.)

No. 1,766.

1. BANKRUPTCY (§ 140*)—PLEDGES—OWNERSHIP OF PROPERTY.

The bankrupts, having pledged certain cotton to the C. Bank by delivering a bill of lading for 100 bales marked "C I P L," obtained the documents from the bank according to custom by executing a trust receipt, which, without vesting title in the bankrupts, authorized a sale of the cotton and a payment of the proceeds to the bank or return of the papers. Instead of this, however, the bankrupts stored the cotton in a warehouse, obtained a negotiable receipt therefor, and fraudulently pledged it to the O. Bank. Thereafter they obtained such warehouse receipt from the latter, and on the same day sent to the O. Bank a check for $6,000, which was the pledge value of the 100-bale lot indorsing on the check an inscription that it was on account of such cotton, and directing the bank to cancel the trust receipt. The warehouse receipt coming into the hands of the bankrupts' trustee was claimed by both banks. *Held*, that since the rule that a debtor may impute payment to one or the other of his debts does *not* apply to the withdrawal of collateral, the notation on the check did not require the bank to credit the payment in accordance therewith, and the C. Bank, having a valid pledge of the cotton not surrendered by a delivery of the papers to the bankrupts, the banks were entitled to the cotton as against the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

2. BANKRUPTCY (§ 140*)—OWNERSHIP OF PROPERTY—ESTOPPEL.

The banks, having been guilty of neither fraud nor gross negligence, and not having induced the bankrupts' trustee to alter his position to his prejudice, were not estopped to claim title to the cotton.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 198, 199, 219, 225; Dec. Dig. § 140.*]

3. ESTOPPEL. (§ 59*)—NATURE AND ELEMENTS—FRAUD.

Estoppel may not be invoked to permit a party asserting it to perpetrate a fraud.

[Ed. Note.—For other cases, see Estoppel, Cent. Dig. §§ 146, 147; Dec. Dig. § 59.*]

In Bankruptcy. In the matter of bankruptcy proceedings of Dreuil & Co. and others. Joint petition by the Bank of Orleans and the Commercial National Bank that a warehouse receipt for 100 bales of cotton and the cotton represented thereby be turned over to the petitioners. Granted.

Merrick, Lewis, Gensler & Schwarz, of New Orleans, La., for Commercial Nat. Bank.

Frank Butler and Denegre & Blair, all of New Orleans, La., for Bank of Orleans.

Dufour & Dufour and Hall, Monroe & Lemann, all of New Orleans, La., for receiver and trustee.

FOSTER, District Judge. In this matter the Bank of Orleans and the Commercial National Bank have filed a joint petition, praying that a warehouse receipt for 100 bales of cotton, in the hands of the trustee, Jonas Hiller, and the cotton represented thereby, be turned over to them. The matter was referred to the referee as special master and now comes up on exceptions to his report.

[1] It appears that before bankruptcy Dreuil & Co. pledged to the Commercial National Bank a bill of lading for 100 bales of cotton, marked "C I P L," and subsequently obtained custody of the bill of lading on what is known as a trust receipt. By the terms of the trust receipt the bill of lading was delivered to Dreuil & Co. temporarily, and for their convenience, as trustees of the bank and without vesting any other title in them, and on the agreement that they would pay over to the bank the proceeds of the cotton, or return the bill of lading within the time specified. Instead of proceeding in the usual course of business, and either selling the cotton and paying over the proceeds, or returning the bill of lading, to the bank, the bankrupts stored the cotton in a warehouse, obtained a negotiable warehouse receipt for the same, and fraudulently pledged it to the Bank of Orleans. Thereafter they obtained the custody of the negotiable warehouse receipt from the Bank of Orleans on another trust receipt of similar tenor. The negotiable warehouse receipt was in the hands of the bankrupts at the time of their adjudication and passed to the trustee, who now has it. The bankrupts are indebted to each bank in a sum exceeding all the collateral held by it, including the 100 bales of cotton pledged to both.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

At the time of obtaining the warehouse receipt from the Bank of Orleans, Dreuil & Co.'s representative had some conversation with the note clerk, regarding their loan, represented by a demand note of $15,000. Later on in the day he sent in a check for $6,000, which was the pledge value of the 100 bales of cotton in question, and indorsed on the check was the following inscription:

"On % D/L #1. Cancel trust receipt 12/30/12 for C I P L 100 B/C."

The trustee excepts to the master's report mainly as to his conclusions of law, and generally because he did not find in his favor. The Bank of Orleans excepts to his seventh finding of fact, wherein he found that Dreuil & Co.'s representative had obtained the said warehouse receipt on the statement that the cotton had been sold, and that he would take up the trust receipt later in the day or would pay the loan.

The trustee contends that the demands of both banks should be rejected; that of the Bank of Orleans on the theory that by indorsing the check in the manner above set out the bankrupt firm had imputed the payment of the $6,000 to that particular trust receipt and thereby canceled the pledge; and that of the Commercial National Bank on the theory that the Commercial National Bank has asserted that the Bank of Orleans has a valid pledge on the cotton, and is thereby estopped to claim any lien itself, because of the following paragraph of the petition:

"That while said cotton or the aforesaid negotiable warehouse receipt was in the possession of the said bankrupt firm of Dreuil & Co. as agents, and for account of petitioner, Bank of Orleans as aforesaid, and before the purpose of delivery thereof was accomplished, the said firm went into bankruptcy and the said cotton and the document representing the same came into the possession or control of the receivers and subsequently of its aforesaid trustee."

I am not called upon to decide the question of priority as between the plaintiffs, they having elected to sue jointly, and it is sufficient if either prevail as against the trustee.

With regard to the contention that the pledge was canceled, while no doubt the debtor has the right under the law of Louisiana to impute a payment to the one or the other of his debts, in this case there was but one debt, and the principle does not extend to the withdrawal of collateral security. On the contrary, the note upon which the money was borrowed puts the control of the collateral in the lender, for it contains the provision that the lender shall have the right to demand other or additional security at any time. The notation on the check could amount to nothing unless by the acquiescence or agreement of the bank. Nothing whatever was said on either side at the time the check was handed in. The preceding conversation between the note clerk and Dreuil & Co.'s representative was general as to the loan and the several outstanding trust receipts, and there was no agreement as to the particular trust receipt here in question. In fact, the note clerk wanted the older trust receipts taken up first. Nor would the usual course of business between the parties warrant the conclusion that the bank had impliedly acquiesced by receiving the check.

I do not find there was any agreement to take up any particular trust receipt, or that the bank had agreed to cancel it or had acquiesced in its cancellation. But, be this as it may, it is immaterial unless the trustee's contention as to the estoppel of the Commercial National Bank is sound. The Commercial National Bank had a valid pledge of the cotton, and it did not surrender it by giving the temporary custody of the bill of lading to the bankrupts, nor was the pledge canceled by the bankrupt's subsequent fraudulent pledge of the same cotton to the Bank of Orleans. As between the parties it existed all the time and needed no revival. If the last pledge is not valid, or is extinguished in any way, then the first pledge is in full force and vigor, and the Commercial National Bank is entitled to the cotton unless estopped to claim it.

[2] The trustee cites a number of cases in support of his plea of estoppel, but I do not find them controlling, considering the facts of the case. Taking the petition of the banks as a whole, all the facts with regard to the transactions are disclosed, and the clause saying that the cotton is held by the bankrupts for account of the Bank of Orleans is at most a conclusion of the pleader. There is neither fraud nor gross negligence shown on the part of the petitioner, nor has the trustee been induced to alter his position to his prejudice. On this state of facts there could be no estoppel. Brant v. Virginia Coal & Iron Co., 93 U. S. 326, 23 L. Ed. 927; Sturm v. Boker, 150 U. S. 312, 14 Sup. Ct. 99, 37 L. Ed. 1093.

[3] Furthermore, it has never been held that estoppel could be invoked to permit the party asserting it to perpetrate a fraud, which would be the effect in this case. The doctrine of estoppel against estoppel might well be applied to the trustee's plea. 16 Cyc. 748. The exceptions of the trustee will be overruled. The exception of the Bank of Orleans will be sustained. In all other respects the report of the master will be confirmed.

There will be a decree in favor of the plaintiffs as prayed for.