SUNDQUIST v. HALLORAN et al.

(Second Division. Nome. August 5, 1916. On the Merits, March 10, 1917.)

No. 2676.

1. MINES AND MINERALS ⬅124—TAILINGS AND DÉBRIS—INJUNC-
TION.

The general equity doctrines govern injunctions with refer-
ence to mining claims. The granting or withholding of an in-
junction resting in the sound discretion of the court, the com-
plainant's laches, the solvency or insolvency of the parties, and
the relative inconvenience to the parties, which will ensue if a
temporary injunction issues, must be considered. There is
nothing peculiar in the application of the general equitable
principles to mining claims, beyond the frequent urgent need of
injunctive relief, because of the destructible nature of mineral
deposits.

2. MINES AND MINERALS ⬅124—TAILINGS AND DÉBRIS—INJUNC-
TION—LACHES.

Where one who claims to own a mining claim stands by for
a period of years, and permits another on an adjoining claim to
so conduct his workings as to cause slight damage by flooding
the surface with tailings, and makes no objection till the other
is in position where injunctive relief asked for would be of
comparatively greater injury to the other than the injury com-
plained of by the plaintiff, the court will not grant a temporary
injunction, but will allow the condition to remain until the case
can be disposed of on its merits.

3. MINES AND MINERALS ⬅124—TAILINGS AND DÉBRIS—INJUNC-
TION.

Where defendants' placer mine workings deposit large quan-
tities of tailings and gravel on the plaintiff's property, and
threaten to do so continuously, injunction will issue to prevent
the continuance of the injury.

4. INJUNCTION ⬅48—CONTINUING TRESPASSES.

The jurisdiction to restrain continuous or repeated trespasses
rests on the ground of avoiding a repetition of similar actions—
a multiplicity of suits. If a defendant manifests a purpose to
persist in his unlawful acts, the vexation, expense and trouble
of prosecuting the actions at law make the legal remedy inade-
quate, and justify a plaintiff in coming into equity for an in-
junction.

This case is before me upon a motion to dissolve the tem-
porary injunction heretofore issued upon application for an

⬅See same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

order against the defendants to show cause why an injunction should not be issued restraining defendants from doing certain acts alleged in the complaint. The motion for the temporary injunction was made for the purpose of restraining the defendants from doing the alleged acts, pendente lite, and the complaint prays that upon the final hearing the injunction be made perpetual.

O. D. Cochran, of Nome, and Lyons & Orton, of Seattle, Wash., for plaintiff.

G. D. Schofield, of Seattle, Wash., and G. J. Lomen and T. M. Reed, both of Nome, for defendants.

TUCKER, District Judge. The precise and sole question now for the consideration of the court is whether or not, on this preliminary hearing, an injunction should be granted plaintiff pendente lite, or until the final hearing of the case on its merits. From the pleadings and the evidence submitted by affidavits, this case belongs essentially to that class of cases wherein the court in its determination thereof should be controlled by the law clearly and concisely laid down in Costigan on Mining Law, pp. 517, 518:

"Apart from such statutory remedies, which the federal courts may enforce if they see fit; the general equity doctrines govern injunctions with reference to mining claims. The granting or withholding of an injunction resting in the sound discretion of the trial court, the complainant's laches, the solvency or insolvency of the parties, and the relative inconveniences to the parties which will ensue if a temporary injunction issues must be considered. There is nothing peculiar in the application of the general equitable principles to mining claims beyond the frequent urgent need of injunctive relief because of the destructible nature of mineral deposits."

It is true that the affidavits do not show such conduct or laches on the part of the plaintiff as would entitle the defendants to the application of the doctrine of equitable estoppel. In Brant v. Virginia Coal & Iron Co., 93 U. S. 326, 23 L. Ed. 927, the court said:

"For the application of that doctrine [of estoppel] there must generally be some intended deception in the conduct or declarations of the party to be estopped, or such gross negligence on his part as to amount to constructive fraud, by which another has been misled to his injury. In all this class of cases * * * the doctrine proceeds upon the ground of constructive fraud or of gross negligence, which in effect implies fraud."

Estoppel can have no application where everything in relation to the transaction or matter is equally known to both parties, and the affidavits show this to be the case as between the parties to this controversy.

It is also true that the affidavits tend to show a probability that the mining property of the plaintiff has been actually invaded by the defendants as a result of their mining operations; and if, upon the final hearing of the case on its merits, this contention is established by the evidence, the plaintiff would be entitled to a permanent injunction and damages for any injury resulting therefrom.   In determining, however, whether a temporary injunction shall issue for the period of time from now until the trial of the case on its merits, the court must be controlled by the law laid down by Costigan, supra, which, though in some measure modified by Mr. Lindley, is certainly not wholly controverted or repudiated.   3 Lindley, §§ 842–872.

It may not be denied that the plaintiff has been guilty of laches in the assertion of his rights respecting the present controversy; and, while such laches may not be of such character as to deprive him of asserting his rights now and hereafter, his conduct does show that he "slept on his rights" to such an extent as not to entitle him to immediate relief at the expense of and to the comparatively greater injury of the parties who have by his negligent conduct been induced to commit the alleged acts of which he now complains. It appears from the affidavits and the pleadings that, even prior to the year 1912, the plaintiff was advised for many years of the conditions in Candle creek of which he now complains.   It is shown by his own affidavits that in 1912 these alleged conditions became worse, and that in 1914 they were still more serious and injurious, and yet he waited until the latter part of June of this year of 1916 to assert his rights.

Because of the laches of the plaintiff in asserting his rights, therefore, and for the reason that it appears from the affidavits and all the circumstances of this case that far greater relative injury would result to the defendants by granting this injunction than will result to the plaintiff by refusing it, the court does not feel justified in granting the same.

See 3 Lindley on Mines, §§ 842–872, as to laches, etc., and page 2192.

If the plaintiff has not suffered such injury for these large number of years as would spur or impel him to the assertion

of his rights for its prevention, it is not reasonable to presume that he will suffer any considerable injury within the next 60 days, within which period this case may be disposed of on its merits. It also appears from the affidavits that the defendants are in active work in their mining operations, and an injunction at this time would interfere with that work, and in all probability result in very great injury to them, while the plaintiff is not now engaged in working his mining ground, and the only damage which would be done to him would be the invasion of his mining ground with the tailings and refuse of the defendants alleged to be dumped or cast thereon, and, as this has not been objected to by plaintiff for a long number of years, a continuation thereof for the short period of 60 days would presumptively be inconsiderable.

For these reasons, I am of opinion that the injunction should at this time be dissolved; and an order will be accordingly entered.

## On the Merits.

Reiterating and confirming the views of the court expressed in its opinion upon the hearing to show cause why a temporary injunction should not go, and it appearing from a great preponderance of the evidence disclosed at the hearing for a permanent injunction that the defendants, by their method of mining and use of the "spillway" so often referred to in the evidence, have deposited or caused to be deposited upon claim 18 of the plaintiff a considerable quantity of tailings, sand, or gravel and other mining débris, from 19 Bench claim, it only remains for the court to consider what merit there is in the defenses or contention that an injunction should not issue in the case, on the ground that there has been no assessment of damage or injury by a jury in compliance with the provision of the Seventh Amendment to the Constitution of the United States that the right of trial by jury be preserved at common law where the amount in controversy exceeds $20, or on the further ground that no actual damage has been done, or that the damage is so slight that the maxim "De minimis non curat lex" applies. As to the defense "Volunti non fit injuria," that plaintiff assented to having his claim made the dumping ground of defendants' tailings and débris, it is, like the other affirmative defenses, not sustained by the evidence. The de-

fendants allege and plaintiff denies; it was incumbent on the defendants to prove it.

Counsel for defendants, in their oral and written arguments at each of the above hearings, have advanced these defenses seemingly with much confidence, relying for support thereof principally on the case of Cheesman v. Hale, 31 Mont. 577, 79 Pac. 254, 68 L. R. A. 414, 3 Ann. Cas. 1038, and other cases taking the same view. In my view of this case, these defenses or contentions are easily answered, both upon the facts and the law. The evidence in the case at bar shows an actual deposit of tailings and other mining débris on the plaintiff's claim by the defendants from their 19 Bench claim in very considerable quantities, according to Mr. Reed's testimony, which is more or less, but effectually, corroborated by the other witnesses for the plaintiff. The attempt of the defendants to refute this testimony, and to show that the tailings and débris were washed down Candle creek from above claim 19, failed and is utterly untenable, certainly, with respect to a larger portion of the deposit. From the almost undisputed testimony of the plaintiff's witnesses it is shown that the deposit of tailings, etc., on claim 18 of the plaintiff is the direct result of the defendants' method of mining, and the use by them in connection therewith of the "spillway" to carry off or convey their tailings into Candle creek; and, furthermore, the evidence, and all the surrounding circumstances of the defendants' mining operations, make it appear within a reasonable certainty that the plaintiff is threatened, and will be threatened continuously, with further invasion of and damage to his property immediately upon the resumption of mining operations in the spring or summer, and that there is no way to avert the threatened damage or invasion, if the defendants continue their present method of mining, and the retention of the "spillway," as they say they will do.

The facts of this case do not correspond with those in the Montana case, and that alone eliminates the holding in that case as of any weight in the decision of the case at bar; and it may be noted that Brantley, C. J., dissenting in the Montana case, said he did not think the question of a trial by jury was presented by the record, and it may be seen from a careful reading of the opinion of the court that it was not reversed upon that ground. The judge delivering the opinion of the

court digressed on the discussion of the abstract question of a trial by jury.

I think it may not be denied that equity will always afford injunctive relief to a plaintiff against a reasonable and imminent apprehension or threats of injury, and that is the main, if not the sole, purpose of the complaint in this case, and the predications of the complaint in that respect are amply sustained by the evidence.

As particularly applicable to this case, I quote from Pomeroy on Equitable Remedies, § 523 (book 5 of his work on Equitable Jurisprudence), in which he says:

"In one sense all injunctions against nuisances are injunctions against threatened nuisances. The only purpose of giving equitable relief at all is the prevention of future harm; but this harm, being future, cannot be a matter of absolute certainty, and therefore is only threatened. If, however, at the time the bill is filed, a nuisance is actually committed, there will, in general, be no question that the threatened danger is sufficiently made out to justify an injunction, if the case, in its other aspects, is sufficient. But when the nuisance has not yet come into existence, and the plaintiff must therefore make out his case of apprehended danger by other means than by pointing to an existing nuisance, a question may be raised concerning the rules by which the court is to be guided."

And then the author proceeds to quote an English decision as to the strictness of the proof required where there is not any actual damage, etc.

Upon the right of trial at law in cases of this character, the same author says at section 522:

"The class of cases not yet discussed is that in which, on application for a permanent injunction, the plaintiff's right, or the fact that a nuisance exists, is doubtful on the evidence before the court, and the parties do not consent to have the controversy settled by the court of equity. In this situation the general doctrine is that 'either party is entitled to insist that the questions on which the legal rights depend should be tried at law.' Satisfactory grounds to support this rule as a matter of reason are not to be found in the cases. Doubtless the explanation of it is largely the fact that in early days the courts of equity were reluctant to undertake the decision of purely legal rights, or questions of fact which ordinarily were tried by a jury. It was 'a rule of expediency and policy, rather than an essential condition and basis of the equitable jurisdiction.' "

And, after further discussion of the interesting subject and the disappearance of the grounds for a jury trial, the author says:

"In leaving the subject it should be noted that, when a bill is to enjoin a threatened, as distinguished from an existing, nuisance, from the nature of the case the requirement of a previous trial at law cannot be applied."

And, quoting from a case cited in the note, he says:

"No such question in this case can be tried at law, no nuisance exists; the object of the bill is to enjoin the defendant from committing one."

It would seem clear from the above quotations that upon the facts of this case, at least, where the ground of equity jurisdiction arises from trespass or nuisance, and their actual existence or apprehension or threat, that the amount of damage resulting is immaterial; but, as directly pertinent to that question, the same author says at section 516:

"In the cases in which the only reason of equity's intervention to enjoin has been to prevent the necessity of a multiplicity of suits at law because of a continuous or recurring nuisance, the courts have shown the same lack of unanimity that is always common to this ground of jurisdiction, whether it arises from a trespass, nuisance, or other tort. Consonant to principle, the weight of authority holds that the mere existence of a continuing or recurring nuisance, however trivial, provided only it is sufficient to sustain an action at law for damages, will support a bill for an injunction."

And, at section 496, the author says, under the title of "Continuous or Repeated Trespasses":

"The jurisdiction of equity to restrain continuous or repeated trespasses rests on the ground of avoiding a repetition of similar actions. It is a basis of jurisdiction that is frequently found in cases where the injury is also irreparable. Very often, indeed, the injury is irreparable only because it is continuous or repeated, when it would not be, if temporary, and in such cases the injunction will issue as a matter of course. For the further discussion of this subject, it will be convenient to consider, first, the cases in which the injury is the result of a single act, or set of acts, of the defendant, which afterwards operate by virtue of natural laws to produce the injury; and, second, the cases in which there are several or many acts of the defendant or defendants which give rise to as many causes of actions. The distinction is roughly that between continuous and repeated trespasses, and is based on the distinctions made in the cases themselves. If a trespass is of the first class and produces substantial damage to the plaintiff, the authorities are well agreed that a proper case for an injunction is presented. If, however, the injury is little or nothing more than the technical invasion of plaintiff's legal right without substantial damage, there is a division among the courts, though a majority of the decisions show that the

foundation principle of this branch of the jurisdiction fairly includes all such cases, whether the damage is substantial or not. If plaintiff's legal remedy may be vexatious, harassing, and hence inadequate, when he recovers substantial damages, still more would it seem to be so when his recovery is only nominal. When the trespasses complained of are caused by the separate acts of individuals, a multiplicity of suits may be caused to plaintiff, either because the defendants are numerous, or because a single defendant does the same or similar acts repeatedly. The principle involved in all such cases is the same and injunctions should issue. And when the basis of the multiplicity of suits which plaintiff fears is that the defendants are numerous, all authorities agree in granting the injunctions. But when it is the case of a single defendant who, by repeating his acts of trespass, makes it necessary for plaintiff to pursue his legal remedy only by a succession of actions, the decisions are curiously diverse. It is held, in a small group of cases, that this is not the kind of multiplicity of suits which equity enjoins, but that instead an injunction is proper only when different persons assail plaintiff's rights. The other view, and the one sustained alike by the weight of authority and by principle, is that, if a defendant manifests a purpose to persist in his unlawful acts, the vexation, expense, and trouble of prosecuting the actions at law make the legal remedy inadequate, and justify a plaintiff in coming into equity for an injunction. None of the cases show any tendency to make the seriousness of the damage the criterion, and the jurisdiction attaches as well to trespasses to personalty as to realty."

See chapters 23 and 24 of Pomeroy's Equity Jurisprudence, book 5 (volume 1 of Pomeroy's Equitable Remedies). See, also, Lindley on Mines, § 843; vol. 3, §§ 2088–2090, etc.

For these reasons, and upon the law as I conceive it to be, I am of opinion that an injunction should be granted, restraining the defendants from casting or causing to be cast upon the plaintiff's claims tailings, sand, or gravel, or other mining débris.

In the decision of this case I must confess that little aid has come from the cases cited or examined, but I found great satisfaction from Mr. Pomeroy's great work.