### SECURITY BANK & TRUST CO. v. GEREN et al.

(Circuit Court of Appeals, Fifth Circuit. March 20, 1923.)

No. 3900.

1. **Banks and banking ⊚⇒154(8)—Evidence held to sustain finding bank knew money deposited belonged to another.**

Evidence *held* to sustain finding that defendant bank knew that money deposited therein and thereafter applied to the payment of a debt due the bank was the proceeds of the sale of plaintiff's property, which the depositor had no right to apply to the satisfaction of his debts.

2. **Banks and banking ⊚⇒134(7)—Bank cannot treat as depositor's money which it knows is held as fiduciary.**

The general rule that a bank may treat money deposited as the individual property of the depositor does not apply, when the bank has knowledge that the deposit is held by the depositor in a fiduciary capacity.

---

⊚⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

3. **Banks and banking** $\Longleftarrow$134(7)—**Mixing of depositor's own funds with trust funds does not permit bank to receive trust funds for debts due it.**

The fact that a depositor mixes his own funds and funds held by him in a fiduciary capacity in one deposit does not entitle the bank, which had knowledge of the trust character of a portion of the funds, to receive the trust funds in payment of a debt due it from the depositor.

4. **Banks and banking** $\Longleftarrow$134(7)—**Taking note from depositor by beneficiaries of trust held not to release bank's liability for accepting trust funds in payment of debt to it.**

A bank's liability for accepting payment of a depositor's debts to it from funds which it knew were held by the depositor in a fiduciary capacity is not released by the taking of notes from the depositor by the parties entitled to the funds, in the absence of proof that the acceptance of such notes was intended to operate as a release, or that they had been paid.

5. **Principal and agent** $\Longleftarrow$137(1)—**Principal held not estopped to claim funds applied by agents to debts due bank.**

The owners of produce sold by an agent are not estopped to claim the proceeds from a bank to which they had been delivered by the agent in payment of his individual debt, where there was no evidence that the principal did or said anything on which the bank was entitled to rely in changing its position in its relation to the agent.

Appeal from the District Court of the United States for the Southern District of Texas; Joseph C. Hutcheson, Judge.

Suit in equity by Charles N. Geren and others, survivors of the partnership of Alexander, Geren & Payne, against the Security Bank & Trust Company. Decree for plaintiffs (273 Fed. 258), and defendant appeals. Affirmed.

Ballinger Mills, of Galveston, Tex., G. G. Kelley and E. Hawes, both of Wharton, Tex., and E. D. Cavin, of Galveston, Tex., for appellant.

John Neethe and F. A. Williams, both of Galveston, Tex., for appellees.

Before WALKER, BRYAN, and KING, Circuit Judges.

WALKER, Circuit Judge. In the year 1918, Alexander, Geren, Payne & Ingram, a partnership having its principal place of business at Ft. Smith, Ark., was engaged in growing potatoes in the vicinity of Wharton, Tex. It made an arrangement with Jesse M. Martin, who was engaged at Wharton in buying and selling for himself and as broker for others, to sell its 1918 crop of potatoes. Under that arrangement Martin was to be paid $15 a car for his services, was to collect the prices of potatoes sold, and deposit the same, less his commissions, in the Wharton Bank & Trust Company, a bank at Wharton, to the credit of Alexander, Geren, Payne & Ingram. Without the knowledge or consent of said firm, the proceeds of the sale in May and June, 1918, of a large part of its potatoes, were deposited by Martin to his own credit in the Security Bank & Trust Company, the appellant, a bank at Wharton, and were used in paying his individual obligations to appellant and other parties. After Ingram had withdrawn from said firm and transferred to his copartners all interest

in the assets thereof, including the claim asserted in this suit, such co-partners, the appellees, brought this suit, in which the appellant was charged with liability for the amount of the proceeds of the sales of such potatoes, which was applied to the payment of obligations of Martin to the appellant. The bill alleged that, at all times from the receipt to the final appropriation of such proceeds of sales of appellees' potatoes, appellant knew that such proceeds belonged to Alexander, Geren, Payne & Ingram, and that Martin had no right or authority to use them as his own. The suit resulted in a decree in favor of the appellees.

The opinion rendered by the District Judge shows that he found that appellant, when it received from Martin for deposit to his own credit drafts for the price of appellees' potatoes, and when it accepted and charged against Martin's account checks given by him to itself for past-due amounts owing by him, knew that Martin was using the money of the appellees to pay his own debts. The evidence on that issue was in sharp conflict. Uncontroverted evidence showed the following:

For several years prior to the transactions in question Martin had had dealings with the appellant, having a deposit and checking account with it. His capital was small. About 90 per cent. of the potatoes he sold and shipped during the 1918 potato marketing season belonged to other parties, for whom he acted as broker. Both the appellant and Martin had their respective places of business in the same small town. It was customary, when Martin presented a draft drawn by him with an attached bill of lading for produce, for the appellant to give him credit on his account for the amount of the draft, less a discount, with the understanding that Martin would take up drafts which were not paid, and pay to the appellant the amount thereof which had been credited on his account. The appellant had some security to protect it from loss by reason of drafts so discounted for Martin not being paid, but that security was inadequate under the circumstances existing in April, 1918. At that time, by reason of the fact that a number of such drafts which had been discounted some time before had not been paid, Martin was liable to the appellant therefor to the extent of about $15,000. Those unpaid drafts were for corn which turned out to be defective, with the result that the consignees would not pay the drafts. For some time prior to the deposit by Martin of drafts to which were attached bills of lading for potatoes owned by appellees and sold by Martin, appellant's cashier was calling on Martin to pay the amounts of previously issued drafts which had not been paid. Martin did not have means of his own with which to comply with those demands.

Several times during May, 1918, appellant's cashier filled out checks payable to itself, dating them in the future, carried such checks to Martin's place of business, and there procured them to be signed by him. When on subsequent dates Martin's account was credited with the amount of drafts accompanying bills of lading for potatoes sold by him for appellees, his previously issued checks to appellant were charged by appellant on his account. In that way appellant, during

the potato marketing and shipping season, got from Martin several batches of postdated checks, which were applied against credit balances created from time to time by Martin's deposit of the proceeds of sales of appellees' potatoes. Testimony of appellant's cashier was to the effect that, when he so got and used Martin's postdated checks, he thought that Martin was in good shape financially, that he was not informed that Martin was a broker, or that any of the goods represented by bills of lading accompanying his drafts which were discounted belonged to persons other than himself, and was not aware that Martin was selling and shipping appellees' potatoes.

There was much testimony inconsistent with the truth of the cashier's version of the transaction, including testimony tending to prove that the cashier knew, before the potato marketing season opened, that Martin as a broker had the sale of appellees' potatoes, that Martin did not have means of his own with which to satisfy appellant's claim, based on outstanding unpaid drafts, that the postdated checks were obtained for the purpose of using them as balances in Martin's favor were created by his deposit of the proceeds of sales of potatoes the bulk whereof was known to the appellant to be owned, not by him, but by his customers, and that, when those checks were charged on Martin's account, appellant's cashier was aware that by that means the price of potatoes owned by Martin's customers, including appellees, was being used to pay Martin's individual debts.

[1, 2] The record by no means convinces us that the court was not warranted in crediting the phase of the evidence adduced which supported a finding that the appellant, when it applied as above stated deposits made by Martin which represented proceeds of sales of appellees' potatoes, was aware that funds to which appellees' firm was equitably entitled were being used to pay Martin's individual debts. The general rule under which a bank may, in dealings with its depositor, treat as his individual property money deposited by him, does not apply when the bank has knowledge that money so deposited is held by the depositor in a fiduciary capacity. The exception to the rule was stated and applied in the case of Union Stockyards Bank v. Gillespie, 137 U. S. 411, 11 Sup. Ct. 118, 34 L. Ed. 724. It was decided in that case that a bank, receiving on deposit from a factor moneys which it must have known were the proceeds of property of the factor's principal, consigned to him by the principal for sale on the principal's account, of which moneys the principal was the beneficial owner, cannot, as against the latter, appropriate the deposit to the payment of a general balance due to the bank from the factor. The following was said in the opinion in that case in reference to a bank's relation to its depositors:

"It is not ordinarily bound to inquire whence the depositor received the moneys deposited, or what obligation such depositor is under to other parties. It is only when there gather around any deposit, or line of deposits, circumstances of a peculiar nature, which individualize that deposit or line of deposits, and inform the bank of peculiar facts of equitable cognizance, that it is debarred from treating the deposit as that of moneys belonging absolutely to the depositor."

[3] We are of opinion that it is enough to bring the instant case within the exception stated and applied in the above-cited one that the circumstances under which appellant charged to Martin's account checks previously given by him to itself were such that it must then have realized that by that means moneys beneficially owned by appellees' firm were being wrongfully used. The circumstance that moneys belonging to himself, as well as moneys equitably owned by his customers, were deposited by Martin and mingled in one account, is not an obstacle to the enforcement of the liability asserted. National Bank v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693.

[4] After appellees' firm learned of Martin's misappropriation of the proceeds of the sale of part of its potatoes, it accepted from Martin small payments on what he owed, and for the remainder took notes, signed by Martin and indorsed by others. Appellant was not a party to those transactions, and it was not proved that the acceptance of such notes was intended to operate as a release of Martin's original obligation or that they have been paid. The appellees did not thereby lose the right to enforce the liability of the appellant which is asserted by this suit. 29 Cyc. 1132 et seq.

[5] In reference to a suggestion that the appellees are estopped to enforce the liability asserted, it is enough to say that the evidence did not show that the appellees or their firm did or said anything which appellant was entitled to rely upon in changing its position in its relations with Martin, or the existence of any ground of estoppel. Brant v. Virginia Coal Co., 93 U. S. 326, 23 L. Ed. 927.

As the court, in determining the amount for which the appellant was held to be liable, adopted a suggestion made by appellant's counsel, the propriety of the method adopted need not be considered; the decree not being complained of in that regard.

No reversible error is shown. The decree is affirmed.